WILLIAM J. MARTIN *vs.* SCHOOL COMMITTEE OF
NATICK & another[1].

Middlesex. January 7, 1985. — July 23, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*School and School Committee,* Termination of employment. *Notice.*

A school committee was entitled to dismiss a tenured teacher as part of
a reduction in force necessitated by declining school enrollment without
complying with the notice and hearing requirements of G. L. c. 71,
§ 42, irrespective of whether the committee, before implementing the
reduction in force, had initiated a process to dismiss the teacher for
inefficiency or incapacity. [464-468]

A public school teacher aggrieved by alleged procedural irregularities
in his performance evaluation, who had pursued and later abandoned
the grievance procedure provided by the applicable collective bargaining
contract, was not entitled under G. L. c. 150E, § 8, to assert the same
claims in an action challenging his dismissal as part of a reduction in
force. [468-469]

In an action by a school teacher challenging his dismissal as part of a
reduction in force, no factual issue was presented by the circumstance
that the teacher allegedly was notified of his termination one day after
the date prescribed by the applicable collective bargaining agreement,
where no harm resulting from the late notice was alleged or was otherwise
apparent from the record. [469-470]

In an action by a school teacher challenging his dismissal as part of a
reduction in force, the plaintiff presented no basis for his claim that the
school committee failed to honor his seniority rights as required by the
applicable collective bargaining agreement. [470]

CIVIL ACTION commenced in the Superior Court Department
on July 18, 1980.

The case was heard by *Elizabeth A. Porada*, J., on a motion
for summary judgment.

[1] The superintendent of schools of Natick.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Charles M. MacLean* for the plaintiff.

*Brian T. Kenner (Deborah S. Russo* with him) for the defendants.

LIACOS, J. The plaintiff, William J. Martin, a former teacher in the Natick public schools, filed suit in the Superior Court in Middlesex County against the defendants, the Natick school committee (school committee) and the superintendent of schools for Natick (superintendent), alleging that the school committee's termination of his employment violated his contractual, statutory, and constitutional rights. The defendants filed a motion for summary judgment, accompanied by an affidavit of the superintendent. The plaintiff filed a counter-affidavit. Following a hearing and the submission of posthearing memoranda, the judge granted summary judgment for the defendants. Martin appealed. We transferred his appeal from the Appeals Court to this court on our own motion. We affirm the judgment.

The record appendix consists principally of the pleadings, the plaintiff's affidavit and appendices, and the defendant superintendent's affidavit and appendices.[2] We apply the principle that "the inferences to be drawn from the underlying facts contained in [the materials provided us] must be viewed in the light most favorable to the party opposing the motion [the plaintiff]." *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371 (1982), quoting *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970). See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

Martin was a tenured teacher in the Natick public school system for twenty-one years. Most of the time he taught grades five and six. For the 1979-1980 school year, his last year of teaching, he was assigned to teach the fourth grade. Martin received poor evaluations of his teaching for the 1977-1978, 1978-1979, and 1979-1980 school years. Evaluating his per-

---

[2] A transcript of proceedings before the school committee is not part of the record appendix, although it appears that the plaintiff submitted it to the Superior Court judge who ruled on the motion.

formance in 1977-1978, Martin's school principal for that year wrote, "Mr. Martin has taught fifth grade this year. It has not been a good year for Mr. Martin or the children." The principal described four problem areas but concluded by commending Martin for the writing that the children did each week. In 1978-1979, when the school system began using a performance rating scale which ranged from outstanding to unsatisfactory, Martin received an over-all rating of "fair" from yet another school principal. He was one of three teachers in a total of approximately 150 teachers to receive a rating of "fair." None received a lower rating. For 1979-1980, Mr. Martin received a rating of "unsatisfactory" from A. John Crisafulli, a third principal. This 1979-1980 evaluation was prepared on March 1, 1980.[3]

On January 21, 1980, Martin was suspended for five days for "unbecoming conduct and/or other good cause." After a hearing conducted on January 29-31, 1980, Martin was suspended for an additional thirty days for the same reasons.[4]

---

[3] Martin states that he never saw or reviewed this evaluation, nor discussed it with Principal Crisafulli, as the collective bargaining agreement required. A meeting between Martin and Crisafulli to discuss the evaluation had been set for March 6, 1980, but was cancelled by agreement of counsel at the request of Martin's counsel. Martin says that in January, 1980, he filed a grievance with the teachers' union charging that Crisafulli, without cause, had requested Martin to resign and had harassed and criticized him. In his affidavit, the superintendent states: "Neither Mr. Martin nor anyone on his behalf pursued a grievance concerning the 1979-80 evaluation of Mr. Martin past step 4, submission to the school committee. The [teachers' union] refused to take Mr. Martin's grievance against [the principal] to arbitration." It is unclear from the record whether the grievance against the principal, referred to by Martin in his affidavit, is the same as that referred to by the superintendent in the statement quoted above. In any event, Martin does not allege or aver that he pursued his grievance against Crisafulli beyond its initial filing. Nor does he dispute the superintendent's statement quoted above.

Martin also states in his affidavit that in January, 1980, he filed a civil complaint against Crisafulli for, inter alia, defamation and intentional infliction of emotional distress. He has provided no information to us on the fate of this complaint, nor has he indicated the relevance of this fact.

[4] Martin challenged the two suspensions on statutory and constitutional grounds in a separate action. This court upheld the validity of both suspensions. Martin v. School Comm. of Natick, 393 Mass. 430 (1984) (Martin I).

On January 31, 1980, the superintendent notified Martin that a hearing would be held by the school committee on March 11, 1980, to decide whether Martin should be dismissed for "inefficiency, incapacity and/or other good cause." There is no indication of such a hearing having taken place on March 11, 1980.

Previously, on December 13, 1979, the school committee had voted to reduce the number of elementary school teachers by ten because of a decline in student enrollment. On April 7, 1980, the superintendent wrote to Martin informing him of the superintendent's recommendation to the school committee that Martin be terminated "[a]s a result of the reduction in force [RIF] necessitated by declining enrollment." The superintendent wrote to Martin on April 16, 1980, informing him again of the recommendation of termination, and that the school committee would vote on the recommendation on June 16, 1980. Martin requested, and was granted, a hearing which was held on June 16, 1980, and June 19, 1980. On the latter date, the school committee voted to dismiss Martin for "other good cause" — a reduction in force caused by declining enrollment. Martin was so informed by letter dated June 24, 1980. On October 9, 1980, the Teachers' Retirement Board (board) held a hearing to determine whether Martin's dismissal was justified. On March 31, 1981, the board issued its decision upholding Martin's dismissal as justified by the RIF. See G. L. c. 32, §§ 16 (2) and 20 (2) (1984 ed.).[5]

Martin's principal contention before us is that he was entitled to a "meaningful hearing" under G. L. c. 71, § 42,[6] and under

[5] The record also contains a letter from the superintendent to Martin dated August 13, 1980, informing Martin that on August 12, 1980, the school committee had voted to dismiss Martin "for cause within the meaning of Chapter 71, Section 42 of the Massachusetts General Laws," specifically for grading students artificially low and for inefficiency and incapacity as reflected in the evaluations for the years 1977-1978, 1978-1979, and 1979-1980. The import of this letter, if any, is unexplained by the parties.

[6] General Laws c. 71, § 42 (1984 ed.), provides in pertinent part: "[A] teacher or superintendent employed at discretion [i.e., with tenure, see G. L. c. 71, § 41] under section forty-one . . . shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . . , insubor-

the due process clause of the Fourteenth Amendment to the Federal Constitution.[7] We do not agree. In *Milne* v. *School Comm. of Manchester,* 381 Mass. 581, 582 (1980), we held that the notice and hearing provisions of G. L. c. 71, § 42, do not apply to "any dismissal decision based solely on an actual decrease in the number of pupils in the schools of a municipality." We based this decision on the clear language of G. L. c. 71, § 42, which states: "Neither this [§ 42] nor the preceding section [§ 41] shall affect the right of a committee to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of the town renders such action advisable." We also held that a teacher who is dismissed solely because of decreasing enrollments had no procedural due process right to a hearing. This was because a teacher dismissed in such circumstances "had no statutory . . . right to expect continued employment in the face of declining enrollment." *Milne* at 583. By the terms of G. L. c. 71, § 42, "a teacher has no legitimate claim of entitlement to continued employment" in the face of declining enrollments. *Milne, supra.* Because there is no legitimate expectation of continued employment under these circumstances, dismissal does not constitute a deprivation of a property interest, and thus no claim can be made that property has been taken without due process. Our

---

dination or other good cause, nor unless at least thirty days, exclusive of customary vacation periods, prior to the meeting at which the vote is to be taken, he shall have been notified of such intended vote; nor unless, if he so requests, he shall have been furnished by the committee with a written charge or charges of the cause or causes for which his dismissal is proposed; nor unless, if he so requests, he has been given a hearing before the school committee which may be either public or private at the discretion of the school committee and at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and examine them; nor unless the charge or charges shall have been substantiated; nor unless, in the case of a teacher, the superintendent shall have given the committee his recommendations thereon. . . . Neither this nor the preceding section shall affect the right of a committee to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of the town renders such action advisable."

[7] "No State shall . . . deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV, § 1.

decision in *Milne* applies squarely to the present case. See also *Boston Teachers Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 214-216 (1982); *Lane* v. *School Comm. of Paxton,* 378 Mass. 794 (1979).

Martin attempts to distinguish his case from *Milne* by arguing that the reason given for his dismissal was a fabrication, and that his firing was arbitrary and unreasonable. See *Milne, supra* at 583 n.3, where we stated that the plaintiff in that case raised "no claim that the reason given for his dismissal was a fabrication, that the school committee's action was arbitrary or unreasonable, or that the plaintiff's statutory or other rights in relation to other teachers, tenured or untenured, were denied," and that we did not need to consider whether a hearing would be required if the plaintiff had raised such claims. See also *Boston Teachers Local 66, supra* at 216 (General Laws c. 71, § 42, does not require notice and hearing "when a tenured teacher is dismissed solely because of budgetary considerations provided, of course, that such reasons are not proffered by the school committee as a sham or subterfuge"). In essence, Martin argues that he was terminated because of the 1979-1980 evaluation in which he was rated "unsatisfactory" and that his termination as part of the RIF was "nothing more than a ruse or subterfuge to dismiss [him]." In so arguing, Martin misconceives the fabrication argument. He does not dispute that enrollments were declining, nor that there was a corresponding need for a RIF. Thus, he admits that there was a genuine need to dismiss some teachers — and therefore that the need for the RIF was not fabricated.[8]

The nub of Martin's argument seems to be that the school committee already had initiated a process to dismiss him for "inefficiency, incapacity and/or other good cause" when it switched tracks and dismissed him as part of the RIF. Thus, Martin argues that the facts show that the school committee actually wanted to fire him for inefficiency or incapacity as a

---

[8] The uncontradicted enrollment figures of the Natick public schools, as shown in the superintendent's affidavit, show that enrollment declined from 8,659 students in 1970 to 6,060 in 1979.

teacher, but dismissed him as part of the RIF. In so doing, Martin argues, the school committee should not be allowed to circumvent the notice and hearing requirements which would apply if he actually had been dismissed for inefficiency or incapacity. Despite its intuitive appeal, we cannot agree with this argument. As quoted above, the statute flatly states: "Neither this [§ 42] nor the preceding section [§ 41] shall affect the right of a committee to dismiss a teacher whenever an actual decrease in the number of pupils in the schools of the town renders such action advisable." G. L. c. 71, § 42. Thus, as long as there is an actual need for a RIF, the school committee is free to dismiss teachers without complying with the notice and hearing requirements of G. L. c. 71, § 42. Martin does not argue that there was no real need for the RIF.[9]

Martin makes a second argument to distinguish his case from *Milne*. In *Milne* there was no claim of a violation of the applicable collective bargaining agreement. *Milne, supra* at 582 n.2. Here, however, Martin directs our attention to the collective bargaining agreement which provides that, in the event of a RIF which affects tenured teachers, the school committee "shall retain . . . those teachers whom it determines are most qualified." [10] We agree with Martin's implied argument

---

[9] Another flaw in Martin's argument is that the record is barren of any evidence of fraud or subterfuge, or that less qualified teachers were retained in the RIF process. While Martin makes much of the Crisafulli evaluation's alleged impropriety, the record does not show exclusive reliance on this evaluation, but rather on the evaluations of three principals and the recommendation of the superintendent that Martin be terminated as part of the reduction in force. Thus, there is no adequate showing of fraud or subterfuge in this case to take it out of the scope of the *Milne* holding.

Additionally, while Martin claims that he received no meaningful hearing, the adequacy of the suspension procedures was upheld in *Martin I*, 393 Mass. 430 (1984). Despite this decision, Martin attempts to reargue many of the same issues in this appeal. Further, the record shows, and the judge found, that Martin did receive a hearing on the RIF termination.

[10] Article XV, § 1 (D), of the collective bargaining agreement states: "If the School Committee determines that further reductions in staff are necessary which affect tenured teachers, it shall retain, consistent with the requirements of all relevant laws, those teachers whom it determines are most qualified. If the Committee determines that qualifications within the disciplines set forth below are approximately equal then the teacher with the most

that the collective bargaining agreement sets forth a process to be used by the school committee in a RIF, which process is valid, as not interfering with the exclusive managerial prerogatives of the school committee. See *Boston Teachers Local 66, supra* at 212-213.

In the present case, art. XV, § 1(D), of the collective bargaining agreement, see *supra* note 10, described the factors which the school committee would use in the event of a RIF. Martin argues that summary judgment should not have been granted for the defendants because he has valid claims under the collective bargaining agreement about which there exist genuine issues of material fact. He alleges four separate breaches: Crisafulli's failure to follow the agreed procedures in writing the 1979-1980 evaluation; the superintendent's failure to notify Martin before April 15, 1980, of his proposed dismissal due to declining enrollments; a failure to honor Martin's seniority rights as allegedly required by the collective bargaining agreement; and a failure to withdraw the 1979-1980 evaluation from Martin's personnel file as allegedly promised.

1. *The two claims pertaining to the 1979-1980 evaluation.* The superintendent avers in his affidavit that neither Martin nor anyone on his behalf "pursued a grievance concerning the 1979-80 evaluation of Mr. Martin past step 4, submission to the school committee," and that the union had refused to take Martin's grievance to arbitration.[11] Martin does not contradict these statements. Instead, he argues that he was not required to pursue the grievance procedure, and that he was entitled to

seniority qualification shall be retained. The teacher's placement on the salary schedule shall not be a consideration in determining who shall be laid off."

[11] The collective bargaining agreement defines a grievance as "a complaint by an employee covered by this Agreement and based on an alleged violation of this Agreement or a dispute involving the meaning, interpretation or application thereof" and describes a procedure for handling grievances. The final step in the procedure is arbitration, and only the union, on behalf of the grievant, "may refer the grievance to arbitration." Moreover, the collective bargaining agreement provides that "[i]n the case of a grievance involving the meaning, application, or interpretation of this Agreement, the decision of the Arbitrator shall be final and binding upon all parties."

elect to pursue his statutory remedy concerning his dismissal. For this proposition Martin relies on G. L. c. 150E, § 8.[12] Even if we accept Martin's interpretation of G. L. c. 150E, § 8, it is unavailing. Martin claims that he was entitled to circumvent the grievance procedure and to pursue his statutory remedy directly. However, he pursued his statutory remedy after he had initiated the grievance procedure. Thus, he did not "elect" his statutory remedy, and the interpretation of G. L. c. 150, § 8, which he urges does not apply to his case. The trial judge properly granted summary judgment for the defendants on Martin's contract claims pertaining to the 1979-1980 evaluation.[13]

2. *Late notification.* Article XV, § 3, of the collective bargaining agreement provides: "Except in unforeseen circumstances, teachers who are to be affected by a reduction in staff will be notified by April 15 of the school year preceding the school year in which the reduction is to take place." Martin argues that he was not notified until April 16, 1980, of the RIF recommendation. The record contains two letters from the superintendent to Martin informing Martin that his termination had been recommended due to the RIF. One letter is dated April 7, 1980, and the other is dated April 16, 1980. Even if Martin received only the April 16, 1980, letter (which he does

---

[12] General Laws c. 150E, § 8 (1984 ed.), provides as follows: "The parties may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement. In the absence of such grievance procedure, binding arbitration may be ordered by the commission upon the request of either party; provided that any such grievance procedure shall, wherever applicable, be exclusive and shall super[s]ede any otherwise applicable grievance procedure provided by law; and further provided that binding arbitration hereunder shall be enforceable under the provisions of chapter one hundred and fifty C and shall, where such arbitration is elected by the employee as the method of grievance resolution, be the exclusive procedure for resolving any such grievance involving suspension, dismissal, removal or termination notwithstanding any contrary provisions of sections thirty-nine and forty-one to forty-five, inclusive, of ·chapter thirty-one, section sixteen of chapter thirty-two, or sections forty-two through forty-three A, inclusive, of chapter seventy-one."

[13] As to the claim that this evaluation was not withdrawn from Martin's personnel file, see note 9, *supra.*

not claim), he has not alleged that any harm flowed from the late notice, nor is any apparent from the record.

3. *Seniority rights*. In Martin's last contract claim, he alleges that the school committee disregarded his seniority rights under art. XV, § 1(D), of the collective bargaining agreement. See note 10, *supra*. The record does not support this claim. The collective bargaining agreement provides in pertinent part: "If the Committee determines that qualifications within the disciplines set forth below are approximately equal then the teacher with the most seniority qualification shall be retained." Martin makes no allegations nor offers any evidence that the school committee determined his qualifications to be approximately equal to those of the other teachers in his discipline, nor that the school committee should have so determined. Thus there is no basis for his claim that his seniority rights were not honored. Summary judgment was granted properly for the defendants.[14]

*Judgment affirmed.*

---

[14] Martin's claim that summary judgment is inappropriate because of the provisions of G. L. c. 71, § 43A, is unpersuasive for two reasons. General Laws c. 71, § 43A (1984 ed.), provides for de novo judicial review of the dismissal of a teacher, but nothing in the statute precludes the use, in an appropriate case, of the procedures provided by Mass. R. Civ. P. 56, in ruling on such a complaint. Cf. *Kurlander* v. *School Comm. of Williamstown,* 16 Mass. App. Ct. 350 (1983). Second, since Martin availed himself of the administrative review procedures provided by G. L. c. 32, § 16, arguably, he has waived his rights under G. L. c. 71, § 43A. See *Haskell* v. *School Comm. of Framingham,* 17 Mass. App. Ct. 628, 633-634 (1984).