THOMAS THIBODEAU *vs.* TOWN OF SEEKONK & others.[1]

No. 94-P-2012.

Bristol. January 9, 1996. - April 30, 1996.

Present: WARNER, C.J., KAPLAN, & IRELAND, JJ.

*Public Employment,* Demotion, Removal, Retirement. *Municipal Corporations,* Officers and employees, Fire department. *Fire Fighter,* Retirement. *Words,* "Removal."

There was no merit to a town's claim that economic exigency could vitiate the applicability to it of the holding of *Retirement Bd. of Attleboro* v. *School Comm. of Attleboro,* 417 Mass. 24 (1994). [370]

There was no merit to a town's claim that an employee was required to submit to arbitration a dispute based on G. L. c. 32, § 16 (2), that was not encompassed by the applicable collective bargaining agreement or otherwise by the provisions of G. L. c. 150E, § 8. [370-372]

An appeal from a Superior Court judgment, which reversed a decision of the Contributory Retirement Appeal Board and restored the plaintiff to his position as captain of firefighters with back pay for a town's failure to follow the procedures set forth in G. L. c. 32, § 16 (2), was remanded for a consideration of the effect of the town's belated compliance with the statute during the administrative proceeding. [372-373]

CIVIL ACTION commenced in the Superior Court Department on November 18, 1993.

The case was considered by *Richard J. Chin,* J.

*Philip Collins* for town of Seekonk.

*James H. Quirk, Jr.,* for the plaintiff.

*Thomas A. Hickey* for Bristol County Retirement Board.

KAPLAN, J. The selectmen of the town of Seekonk on August 26, 1991, eliminated the position of captain of firefighters and demoted the plaintiff, Thomas Thibodeau, then captain, to the rank of lieutenant. The plaintiff asserted that the demotion was ineffective because the town had not fol-

[1]Bristol County Retirement Board and Contributory Retirement Appeal Board.

lowed G. L. c. 32, § 16(2), which would require the town to give notice and a fair summary of the facts to the local retirement board and, ultimately, if challenged, to justify the demotion. The plaintiff applied to the local Bristol County Retirement Board (BCRB), which declined to act. Upon administrative review, the Contributory Retirement Appeal Board (CRAB) decided that § 16(2) did not govern demotions. The plaintiff then commenced the present action in Superior Court against the town (and joining the administrative bodies), claiming review of the record under the Administrative Procedure Act, G. L. c. 30A, § 14. This has resulted in a judgment reversing CRAB's decision and restoring the plaintiff to his position as captain with back pay. The town appeals. (It is understood that BCRB and CRAB acquiesce readily in the final interpretation of the statute.) We agree with the Superior Court, but remand to that court for consideration of the effect of the town's later filing under § 16(2) on July 27, 1993.

To begin, the plaintiff was a "call" firefighter in the town from 1964 to 1970, when he became full time. He later attained the rank of lieutenant, and in November, 1987, was promoted to captain. On August 26, 1991, the town's board of selectmen, following discussion of reducing expenses of the force, ordered the plaintiff "demoted" to the rank of lieutenant.

General Laws c. 32, dealing with "Retirement Systems and Pensions," provides in § 16(2) (text in Appendix) that the "removal or discharge" of any member in service in group 4 (comprising firefighters) who is less then fifty-five years old but has completed twenty years or more of creditable service (the plaintiff's situation) "shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based" has been filed with the (local) retirement board. This filing initiates an administrative procedure of hearing, if requested, and findings and decision. "Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation."

The town, assuming that "demotion" was distinct and different from the statutory "removal or discharge," chose not to file the fair summary commencing the § 16(2) proceeding. The plaintiff had a contrary view of the statute and on

September 25, 1991, applied to BCRB for action under § 16(2). BCRB on November 20, 1991, refused to act. The plaintiff appealed to CRAB which assigned the appeal to the Division of Administrative Law Appeals (DALA), see § 16(4). The town appeared as an intervener. DALA through an administrative magistrate on July 15, 1993, held for the plaintiff, ruling that his "demotion" counted as a "removal" under § 16(2). On this issue the magistrate cited and followed a decision of the Superior Court, Bristol County, in an Attleboro retirement board case rendered on May 12, 1992.[2] Upon this view, the town had improperly scorned the statute; the removal had not become effective, and the plaintiff must be restored as captain. But, in turn, reviewing the decision of the administrative magistrate, CRAB held on October 22, 1993, — without mention of the Attleboro case — that demotion was not a removal or discharge. Thus the § 16(2) procedure was not implicated, and BCRB's refusal to accept jurisdiction was affirmed.

The plaintiff's action in Superior Court under c. 30A followed on November 18, 1993, and the administrative record was certified. While the action was pending, the Supreme Judicial Court on February 8, 1994, decided an appeal of the very Attleboro case. The court now settled authoritatively that demotion was a removal within the meaning of c. 32, § 16(2). *Retirement Bd. of Attleboro* v. *School Comm. of Attleboro*, 417 Mass. 24 (1994). The court wrote in part:

> "The word 'removal' in § 16(2) is superfluous in conjunction with the word 'discharge' unless 'removal' means something less than a complete termination of the employment relationship. We see no reason, moreover, why the Legislature would intend to make a distinction in § 16(2) in available procedural protections between a discharge from all employment and a demotion. For the purposes of protecting retirement benefits, an unwarranted demotion to a lower-paying job is different only in degree from an unwarranted firing of an employee. In each instance, if not reversed, the challenged employment decision can adversely affect the level of the employee's retirement benefits."

---

[2]Attleboro Retirement Board & another *vs.* Attleboro School Committee & another, Bristol County Superior Court, No. 91-01721 (May 12, 1992).

*Id.* at 27.

In the present action, the Superior Court judge of course followed the *Attleboro* case. He allowed the plaintiff's motion for judgment on the record and on June 20, 1994, entered an (amended) judgment declaring that the plaintiff's removal from his position as captain had not become effective and ordering him restored in that position without loss of compensation and benefits.

The town now tries to find a possible means of escape from the impasse created by the final *Attleboro* disposition.

1. The town says that the *Attleboro* ruling leaves room for interpreting § 16(2) so as not to apply to cases where demotion (or any removal or discharge) has been occasioned by economic need: in this case, says the town, the demotion was intended in a time of stringency to save the town some $8,000 in the plaintiff's annual salary.

The text of § 16(2) admits of no such exclusion or exception, nor does the final opinion in *Attleboro* intimate any. It would be out of keeping with the whole pattern of § 16(2) to allow a town or other entity to decide on its own that the particular case was within the supposed exclusion, and thereupon to avoid the statutory procedure. Rather, the town should present the fair summary and, if requested, prove its claimed justification. Relevant economic exigency may well serve to justify, cf. *Shaw* v. *Selectmen of Marshfield*, 36 Mass. App. Ct. 924, 925-926 (1994), but this is to be shown under § 16(2), not presumed to exist because of the town's own say-so.[3]

2. The town notes that the plaintiff's union "grieved" the question of the plaintiff's demotion under its collective bargaining agreement with the town. This, says the town, should preclude the plaintiff from any resort to the procedure and remedy of § 16(2).[4]

---

[3]As BCRB's brief indicates, the notice to the local board under § 16(2) serves important record-keeping and other administrative functions in the retirement and pension system regardless of the cause of a demotion or the like.

[4]We consider the town's defense on these lines although it appears to have been abandoned. There was reference to the bargaining contract and possible preclusion in the material before DALA, but the administrative magistrate ignored any such defense and rested on her interpretation of § 16(2). Besides a passing reference to the DALA record, the town did not

The union made a pass at grieving the demotion by reference principally to a provision of the collective bargaining agreement that was plainly irrelevant. This was art. 4, § 2, stating that a permanent firefighter "cannot be removed from his job without just cause," and just cause included "refusal to obey an order of the Chief," etc. After hearing the union, the town responded:

> "Upon hearing your arguments on behalf of your grievance, the Board [of Selectmen] unanimously voted to deny the grievance. It is their opinion that the elimination of the position of Captain is not an action that requires collective bargaining negotiations and therefore is not a violation of any provision of the collective bargaining agreement."

The town was taking the view — evidently the correct view — that the elimination of a position, unrelated to the employee's performance or conduct, was not a grievable matter; rather it lay within the town's management prerogative, as described in art. 1, § 3, the usual reservation of "Management Rights."[5] Since the plaintiff's demotion, resulting from elimination of the position of captain, was not grievable under the contract, as the town itself declared, the union on the plaintiff's behalf was under no obligation to seek, let alone to exhaust, arbitration. In fact the union allowed the grievance to languish, and it did not reach an arbitrator. In these circumstances it would be odd indeed to preclude the plaintiff as a public employee from the statutory route of § 16(2). "[E]m-

bring the defense forward to CRAB, which also ignored the defense, and did not set it out in its pleading in Superior Court in response to the plaintiff's complaint. After the *Attleboro* decision in the Supreme Judicial Court, the town attempted to resurrect the defense in an affidavit which the judge refused to receive. It would indeed be unfair to entertain this afterthought which came when the § 16(2) controversy had wound its way for more than three years and at the stage where the town's hopes of securing a negative reading of § 16(2) had been greatly dimmed.

[5]The record indicates that the union complained to the Labor Relations Commission about the town's failure to bargain before eliminating the position of captain. The commission agreed with the town: "It is well established that the decision to eliminate a position is a level of services decision within the exclusive management prerogative of the employer, and the employer need not bargain about such a decision. See *School Committee of Newton* v. *Labor Relations Commission*, 388 Mass. 557, 564 (1983)."

ployees need not submit to arbitration disputes based on inde-
pendent statutory rights that are not addressed and encom-
passed by the collective bargaining agreement. See *Willis* v.
*Selectmen of Easton*, 405 Mass. 159, 164 & n.6 (1989), and
cases cited." *Rooney* v. *Yarmouth*, 410 Mass. 485, 491 (1991).

The town cites G. L. c. 150E, § 8, see appendix, *post*. The
second sentence of § 8 allows for a possible override of
§ 16(2) (among other statutes), but only when the contract
contains no grievance procedure specifying arbitration and
the employee wants and chooses to bypass the statute. If the
first condition may conceivably be deemed met here because
grievance provisions, although present in the contract, did
not apply to abolition of a position, the second condition is
not met. The third sentence of § 8, if at all applicable, also
depends on employee's election.

In further discussion of the foregoing two points, the town
refers to teacher-dismissal practice. We respond in the
margin.[6]

3. Affirmance of the judgment appealed from, restoring the
plaintiff to his position of captain, does not mean that he is
entitled to hold that position without limit of time. Thus, if at

---

[6]1. Contending that it need not comply with § 16(2) upon its own unilat-
eral assertion that the demotion was due to economic need, the town points
out that a school committee need not afford a teacher notice and hearing
when his or her dismissal is occasioned by a reduction in force. This,
however, came about through explicit provision in G. L. c. 71, § 42,
whereby the teacher had no entitlement to continued employment, no
property right in the job. See *Martin* v. *School Comm. of Natick*, 395 Mass.
461, 466 (1985). See also *Boston Teachers Union, Local 66* v. *School Comm.
of Boston*, 386 Mass. 197, 215 (1982); *Haskell* v. *School Comm. of Framing-
ham*, 17 Mass. App. Ct. 628, 631 (1984). We are not aware of any counter-
part statute or doctrine applicable to the present case.

It may be noted that legislation of 1985 amending G. L. c. 32, § 16(5)
(Appendix), cut back on the possible recourse of senior teachers to § 16(2).
The details in the complex of teachers' statutes need not be pursued.

2. The teacher cases go no further than to suggest that, where the collec-
tive bargaining agreement makes certain disputes grievable and arbitrable,
the union's taking the grievance route in such a dispute may preclude it
from recourse to a statutory alternative. See *Martin* v. *School Comm. of
Natick*, 395 Mass. at 467-469 & n.10. Compare *Fogarty* v. *School Comm. of
Palmer*, 15 Mass. App. Ct. 1008, 1008-1009 (1983). We need not examine
whether the suggested teacher preclusion derives from G. L. c. 150E, § 8,
for, as we have seen, the grievance procedure in the firefighters' contract
did not apply to the abolition of the position of captain resulting in his
demotion.

any time the town believes that there are grounds for the plaintiff's demotion, it may so order and then use the § 16(2) proceeding. In fact, in its response to the complaint in Superior Court, the town alleged:

> "Without waiving any rights, the Town on July 27, 1993 [twelve days after the magistrate's decision for the plaintiff] filed with the Bristol County Retirement Board a document summarizing or clarifying the basis of its decision to eliminate the plaintiff's position and demote him to the next lowest rank of Fire Lieutenant."

The brief filed on behalf of BCRB states that it had "recently" held a "justification hearing" regarding the plaintiff's demotion, but no details were provided.

The late resort by the town to § 16(2) cannot result in validating the plaintiff's demotion retroactively to any earlier date than July 27, 1993. It may, however, have consequences for the subsequent period in regard to the plaintiff's status and entitlement to compensation and benefits. Accordingly, the case will be remanded to the Superior Court to hear the parties on this matter and to take any useful measures to speed the conclusion of the controversy.

The judgment is affirmed, and the case is remanded to the Superior Court for consideration as indicated in this opinion.

*So ordered.*

APPENDIX.

General Laws c. 32, § 16(2), as amended through St. 1982, c. 630, § 21, provides in full: "The removal or discharge of any member in service classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and has completed fifteen or more years of creditable service, or any member so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, or any such member who is a veteran and has completed ten or more years of creditable service, shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board. The procedure set forth in subdivision (1) [providing such notice to the employee as well] relative to delivery of copies, statement of service thereof, notice, hearing if requested, and the filing of a certificate of findings and decision, so far as applicable, shall apply to all proceedings involving such removal or discharge. Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation."

General Laws c. 150E, § 8, as amended through St. 1989, c. 341, § 80, provides in full: "The parties may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement. In the absence of such grievance procedure, binding arbitration may be ordered by the [Labor Relations] commission upon the request of either party; provided that any such grievance procedure shall, wherever applicable, be exclusive and shall supercede any otherwise applicable grievance procedure provided by law; and further provided that binding arbitration hereunder shall be enforceable under the provisions of chapter one hundred and fifty C and shall, where such arbitration is elected by the employee as the method of grievance resolution, be the exclusive procedure for resolving any such grievance involving suspension, dismissal, removal or termination notwithstanding any contrary provisions of sections thirty-nine and forty-one to forty-five, inclusive, of chapter thirty-one, section sixteen of chapter thirty-two, or sections forty-two through forty-three A, inclusive, of chapter seventy-one. Where binding arbitration is provided under the terms of a collective bargaining agreement as a means of resolving grievances concerning job abolition, demotion, promotion, layoff, recall, or appointment and where an employee elects such binding arbitration as the method of resolution under said collective bargaining agreement, such binding arbitration shall be the exclusive procedure for resolving any such grievance, notwithstanding any contrary provisions of sections thirty-seven, thirty-eight, forty-two to forty-three A, inclusive, and section fifty-nine B of chapter seventy-one."

General Laws c. 71, § 42, as amended through St. 1972, c. 464, § 2, provided in part at the time of the *Boston Teachers Union, Haskell,* and *Martin* teachers' cases: "[A] teacher . . . or superintendent employed at discretion [i.e., with tenure, see G. L. c. 71, § 41] under section forty-one . . . shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . . , insubordination or other good cause, nor unless at least thirty days, exclusive of customary vacation periods, prior to the meeting at which the vote is to be taken, he shall have been notified of such intended vote; nor unless, if he so requests, he shall have been furnished by the committee with a written charge or charges of the cause or causes for which his dismissal is proposed; nor unless, if he so requests, he has been given a hearing before the school committee which may be either public or private at the discretion of the school committee and at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and examine them; nor unless the charge or charges have been substantiated; nor unless, in the case of a teacher . . . the superintendent shall have given the committee his recommendations thereon. The change of marital status of a female teacher or superintendent shall not be considered cause for dismissal under this section. *Neither this nor the preceding section shall affect the right of a committee to dismiss a teacher whenever an actual decrease in the number of pupils in the school of the town renders such an action advisable*" (emphasis added).

General Laws c. 32, § 16(5), as amended through St. 1985, c. 188, § 9, provides in part: "The provisions of this section [c. 32, § 16] relative to the right of any member to a hearing or to the right of review by the district

court shall not apply in the case of the removal or discharge of any state official or of any official of any political subdivision of the commonwealth for which provision is otherwise made in any general or special law, anything in this section to the contrary notwithstanding. The provisions of this section [c. 32, § 16] relative to the right of any member to a hearing or to the right of review by the district court shall not apply to any *teacher* or principal or superintendent of schools employed at discretion or any superintendent employed under a contract, for the duration of his contract, or any principal or supervisor, who has been dismissed, demoted, or removed from a position by a vote of a school committee under the provisions of *section forty-two*, forty-two A, or section sixty three of *chapter seventy-one*" (emphasis added).