RICHARD STEPHEN COFFEY *vs.* COUNTY OF PLYMOUTH.

No. 98-P-915.

Plymouth. January 7, 2000. - May 4, 2000.

Present: GREENBERG, KAPLAN, & RAPOZA, JJ.

*Correction Officer. Contract,* Collective bargaining contract. *Administrative Law,* Exhaustion of remedies. *Workers' Compensation Act,* Public employee, Compensation. *Statute,* Construction. *Words,* "Regular salary."

The grievance provisions of a collective bargaining agreement were not applicable to a county correctional officer's claim for benefits arising under G. L. c. 126, § 18A, which protects such employees from loss of pay on account of injuries inflicted by prisoners or patients in their custody. [194-195]

This court construed the term "regular salary," as used in G. L. c. 126, § 18A (which protects county correctional officers from loss of pay on account of injuries caused by prisoners or patients in their custody), to mean the regular salary the employee currently would earn if he had been able to continue to work in the same position he held at the time of his injury. [195-196]

CIVIL ACTION commenced in the Superior Court Department on October 29, 1996.

The case was heard by *Suzanne DelVecchio,* J., on motions for summary judgment.

*Stewart A. Engel* for the plaintiff.

*Robert E. McCarthy* for the defendant.

GREENBERG, J. Richard Coffey (employee) contends that benefits under G. L. c. 126, § 18A, which protects county correctional officers from loss of pay on account of injuries inflicted by violent prisoners or patients, should be computed at current salary levels for the same position.[1] The County of Plymouth

---

[1]The statute provides, in relevant part: "An employee in a jail or house of correction of a county who, while in the performance of duty, receives bodily injuries resulting from acts of violence of patients or prisoners in his custody, and who as result of such injury is entitled to benefits under chapter one

(county) rejected this reading of the statute, saying instead that "regular salary" refers to what the disabled employee earned at the time of his injury.

The employee brought suit against the county in the Superior Court in October of 1996, seeking the pay increases denied him from February 22, 1990, the date upon which he became permanently and totally disabled at work while attempting to quell a prison riot.[2] On cross motions for summary judgment, the judge ruled that the employee had failed to exhaust his administrative remedies under a grievance procedure provided in the collective bargaining agreement between his union and the county. The case was dismissed as prematurely filed. The employee appeals.

It is agreed that the collective bargaining agreement is silent on the subject of computation of "regular salary" under the statute. The judge concluded, however, that employees' salaries are a subject within the scope of the agreement. Moreover, reasoned the judge, the employee "has failed to demonstrate that his employer repudiated or nullified the grievance machinery," and thus must exhaust this remedy before suing the employer. See *Balsavich* v. *Local Union 170, Intl. Bhd. of Teamsters*, 371 Mass. 283, 286 (1976). We disagree.

The legal principle which is to be applied in resolving this threshold issue is well established. "[S]ubstantive rights in the labor relations context can exist without interpreting collective-bargaining agreements." *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988). Despite the strong policy favoring arbitration, distinct considerations arise "where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Atchison, Topeka & Santa Fe Ry. Co.* v. *Buell*, 480 U.S. 557, 564-565 (1987), quoting from *Barrentine*

---

hundred and fifty-two, shall be paid, in addition to the benefits of said chapter one hundred and fifty-two, the difference between the weekly cash benefits to which he is entitled under said chapter one hundred and fifty-two and his regular salary."

[2] The complaint also sought the sick and vacation days which would have accrued had he remained actively employed, but the employee does not pursue that claim on appeal. This is wise, as the point has been decided adversely to the employee in the context of similar statutes providing benefits to police officers, firefighters, and other public employees. See *Rein* v. *Marshfield*, 16 Mass. App. Ct. 519, 523 (1983); *School Comm. of Medford* v. *Medford Pub. Sch. Custodians Assn.*, 21 Mass. App. Ct. 947, 948-949 (1986).

v. *Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 737 (1981). The losses to which § 18A extends are those which arise from the nature of the employment, not the collective bargaining agreement. There is nothing in the agreement that deals with the application of § 18A which requires the employee to submit to a grievance procedure. See *Ludlow Educ. Assn.* v. *Ludlow*, 31 Mass. App. Ct. 110, 115 (1991); *Thibodeau* v. *Seekonk*, 40 Mass. App. Ct. 367, 371-372 (1996). See also *Willis* v. *Selectmen of Easton*, 405 Mass. 159, 164 (1989) (no obligation to follow grievance procedure where firefighter sought pay owed under statute). Parties to collective bargaining agreements are bound to arbitrate only disputes within the scope of the arbitration clause. See *International Bhd. of Elec. Wkrs., Local 1228* v. *Freedom WLNE-TV, Inc.*, 760 F.2d 8, 10 (1st Cir. 1985). The arbitration clause here applies only to grievances as to "the meaning or application of the specific provisions of [the] Agreement," and thus is not relevant to § 18.

The crux of the case is, then, the meaning of the phrase "regular salary" as used in G. L. c. 126, § 18A, inserted by St. 1953, c. 355, amended by St. 1977, c. 1002. Prior to May 8, 1953, there was nothing to cover the gap between an employee's regular salary and his lesser entitlements under G. L. c. 152, the workers' compensation statute. Section 18A provides that a correctional officer injured on duty by prisoners' acts of violence shall be paid, in addition to his workers' compensation benefits, the difference between those benefits and his "regular salary."

The county argues that the words "regular salary" refer only to the wages that the employee earned at the time of his injury, in this case $550.97 per week. Subsequent step and cost of living increases under the collective bargaining agreement have been excluded from the calculation of his § 18A benefits, such that while his former coworkers' salaries have increased substantially, the employee's weekly benefits have remained at $550.97.

Although we have had no occasion to define "regular salary" in this context, New York has done so. *Mashnouk* v. *Miles*, 55 N.Y.2d 80, 88 (1982), held that the phrase "regular salary or wages" as employed in a statute similar to G. L. c. 126, § 18A,[3] "includes prospective salary increases given to active fire fight-

---

[3]The statute in New York, N.Y. Gen. Mun. Law § 207-a(2) (Consol. 1982 & Supp. 2000), provides that a permanently disabled fireman receive, in addition to his accidental disability retirement allowance, "the difference between

ers subsequent to the award of an accidental disability retirement allowance or pension." This includes step increases. See, e.g., *Aitken* v. *Mount Vernon*, 200 A.D.2d 667, 668 (N.Y. 1994); *Schade* v. *Wallkill*, 235 A.D.2d 542, 542-543 (N.Y. 1997). These cases stand for the proposition that the Legislature intended a more elastic definition of the phrase "regular salary." To adhere to the county's more restrictive interpretation defeats the basic purpose of the statute, which is to insure that correctional officers who become disabled in the line of duty receive more benefits than workers injured at safer jobs.

It is a "golden rule of statutory interpretation" that, as between competing statutory interpretations, the one that leads to an unreasonable result is rejected in favor of the one that leads to a reasonable result. *Commonwealth* v. *Maracic*, 18 Mass. App. Ct. 722, 724 (1984), quoting from 2A Sands, Sutherland Statutory Construction § 45.12 (4th ed. 1973). Because G. L. c. 152, § 34B, provides for a yearly cost of living adjustment to workers' compensation benefits, calculated pursuant to 452 Code Mass. Regs. §§ 3.01, 3.03(2) (1997) (referencing periodic "Circular Letters" issued by the Department of Industrial Accidents), those benefits alone will equal or exceed the employee's original salary level.[4] We do not imagine that the Legislature, by providing that correctional officers be paid a sum "in addition to" what others receive, intended thereby to compensate them less well than those other employees. We conclude, therefore, that "regular salary" does not refer to the employee's pre-injury salary, but to the regular salary the employee currently would earn if he had continued to work in the same position.

The judgment is reversed. Summary judgment is to be entered for the employee in an amount to be determined by the Superior Court on remand for that purpose.

*So ordered.*

---

the amounts received under such allowance or pension and the amount of his regular salary or wages."

[4]To illustrate, in 1990, the employee received $367.32 under G. L. c. 152, § 34B, and $183.66 under G. L. c. 126, § 18A. Thus, if the cost of living multiplier was 1.523, § 34B benefits would be $559.43 ($367.32 x 1.523).