THOMAS PRESBY *vs.* COMMISSIONERS OF BRISTOL COUNTY & another.[1] No. 06-P-1499. July 2, 2007. *Correction Officer. Public Employment,* Assault pay benefits. *Words,* "Act of violence."

This matter arises under G. L. c. 126, § 18A,[2] providing for assault pay for

---

[1]Sheriff of Bristol County.

[2]Section 18A, as amended by St. 1977, c. 1002, provides, in full:

"An employee in a jail or house of correction of a county who, while in the performance of duty, receives bodily injuries resulting from acts of violence of patients or prisoners in his custody, and who as result of such injury is entitled

correction officers.[3] The issues presented on appeal are (1) whether the plaintiff's union waived his right to judicial relief (because the right to assault pay was incorporated into the governing collective bargaining agreement [CBA][4]) and (2) whether the plaintiff's injuries, plainly received while on duty, "result[ed] from acts of violence of . . . prisoners in his custody."

Shortly before noon on December 30, 2001, the plaintiff, Thomas Presby, a correction officer, was on the third level of the Ash Street correction facility in New Bedford working an assigned shift when he responded to a call over his radio that there was an inmate fight in progress in the yard. Hurrying down the stairs to render assistance, Presby apparently missed the last three steps. He felt a sharp pain in his back and experienced shortness of breath. Realizing that he had sustained an injury and could not respond to the altercation, he sought treatment elsewhere in the facility. He reported his injury to a supervisor, and was transported to a local hospital. He was out of work from December 31, 2001, through June 3, 2002, and received workers' compensation benefits under G. L. c. 152 in an amount less than his regular salary. During this period, the sheriff did not pay Presby the differential between the amount of his weekly workers' compensation benefits and his weekly salary. See *Coffey* v. *County of Plymouth*, 49 Mass. App. Ct. 193, 195 (2000).

Although Presby returned to work in June, 2002, he stopped work on April 22, 2003, because of discomfort from a left shoulder injury allegedly related to the earlier injury. He resumed receiving workers' compensation benefits. He underwent surgery on his left shoulder in August, 2003, and had not returned to work as of December 1, 2004. Once again, the sheriff did not pay Presby the weekly differential.

Through his union, Presby grieved the denial of assault pay benefits, and after a "Step II" hearing, his grievance was denied on the basis of the legal department's conclusion that Presby was injured "in responding to an incident rather than an actual confrontation with an inmate."

On September 13, 2002, Presby commenced the present action for declaratory relief against the defendants, the Bristol County sheriff and the county commissioners. All parties moved for summary judgment, the defendants

---

to benefits under chapter one hundred and fifty-two, shall be paid, in addition to the benefits of said chapter one hundred and fifty-two, the difference between the weekly cash benefits to which he is entitled under said chapter one hundred and fifty-two and his regular salary, without such absence being charged against available sick leave credits, even if such absence may be for less than eight calendar days duration."

[3]See *Zelesky* v. *Commissioner of the Div. of Pub. Employee Retirement Admn.*, 30 Mass. App. Ct. 106, 109 (1991).

[4]The language of the CBA, which had "expired" in 2000 prior to Presby's injury, contained a provision substantially tracking G. L. c. 126, § 18A:

"An employee who while in the performance of his/her duty receives bodily injuries resulting from acts of violence of prisoners in his/her custody, and who as a result of such injury would be entitled to benefits under Chapter 152 of the General Laws, shall be paid the difference between the weekly cash benefits to which he/she would be entitled to [*sic*] under said Chapter 152 and his/her regular salary without such absence being charged against available sick leave credits, even if such absence may be for less than six calendar days duration. Such supplemental payment shall be called 'Violent Act Pay.' "

arguing that (1) Presby's remedy (which he had already pursued, unsuccessfully) was contractual and lay under the grievance procedure of the CBA, and judicial relief was thus unavailable[5]; and (2) Presby was not entitled to assault pay in any event because, in a nutshell, there had been no "assault" upon him by a prisoner, i.e., the injury complained of was not the direct result of a prisoner's violent act. A Superior Court judge denied the defendants' motion and allowed Presby's motion for summary judgment, concluding that Presby was not bound by the arbitration clause of the CBA because the CBA had "expired" prior to the dispute between the parties,[6] and that, based on *Conroy* v. *Boston*, 392 Mass. 216, 219-220 (1984), Presby's injuries did result from an act of violence of a prisoner. We are in substantial agreement with the judge's reasoning. Cf. *Chambers* v. *Lemuel Shattuck Hosp.*, 41 Mass. App. Ct. 211, 212 (1996) (discussing G. L. c. 30, § 58, a provision equivalent to G. L. c. 126, § 18A, but applying to State employees).

In *Conroy*, a correction officer, who fell while chasing an escaping prisoner, was awarded assault pay even though no violence was directed at the officer and his injury did not occur while the inmate was in his custody. A fair reading of *Conroy* provides support for the plaintiff's argument here that he is covered, notwithstanding that no prisoner committed an assault and battery on him individually.[7] Cf. *Coffey*, 49 Mass. App. Ct. at 194. The *Conroy* court stated: "We think that the flight of the inmate from Conroy during the escape attempt constituted an 'exertion of . . . physical force so as to . . . abuse.' It was an abuse in that it was unlawful. . . . The action of the inmate was therefore an 'act of violence.' The injury which Conroy suffered while chasing

---

[5]The defendants have not argued that the employee waived his right to seek judicial relief by commencing and then abandoning the grievance process. The sections of the agreement governing grievance and arbitration have not been made part of the record on appeal.

[6]The defendants' reliance on *DaLuz* v. *Department of Correction*, 434 Mass. 40 (2001), is of no avail in these circumstances. In *DaLuz*, the Supreme Judicial Court determined that the right to assault pay benefits pursuant to G. L. c. 30, § 58, was not a " 'personal, substantive, nonwaivable statutory guarantee' capable of separate judicial enforcement notwithstanding incorporation in a collective bargaining agreement." *Id.* at 46, quoting from *Rooney* v. *Yarmouth*, 410 Mass. 485, 492 (1991). However, here, unlike *DaLuz*, the plaintiff did not pursue his grievance through the arbitration process of the CBA to a "final judgment on the merits." *DaLuz, supra* at 45.

In the instant matter, the CBA expired *prior* to the incident. Thus, while the agreement's provision for assault pay remained in effect, the requirement to pursue grievances through arbitration did not. The defendants, citing *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional Sch. Dist. Comm.*, 398 Mass. 695, 699 (1986), acknowledge as much, stating that "[i]n the absence of an evergreen clause [not present here], the only term of the contract that does not continue beyond the expiration date is the arbitration clause." See *Nolde Bros.* v. *Local 358, Bakery & Confectionery Wkrs.' Union*, 430 U.S. 243, 249 (1977); *Litton Financial Printing Div.* v. *National Labor Relations Bd.*, 501 U.S. 190, 205-207 (1991). (Neither party has raised the issue of the propriety or efficacy of proceeding in these circumstances before the Labor Relations Commission. See G. L. c. 150E, §§ 10, 11. Compare *Litton, supra* at 206-207, discussing *National Labor Relations Bd.* v. *Katz*, 369 U.S. 736 [1962].)

[7]As the statute under which *Conroy* was decided did not require that the prisoner be in the custody of the officer, the question there was whether the injury suffered by the officer resulted from an act of violence (in that case, an attempted escape) that was not directed at the officer. *Conroy*, 392 Mass. at 217-218.

the inmate resulted from this act of violence." (Footnote omitted.) *Conroy*, 392 Mass. at 219-220.

*Conroy* was running *after* an inmate attempting to escape. Presby was running *toward* inmates involved in a fight. In this circumstance, the fact that he was elsewhere is, in our view, of no consequence. Presby was running toward an act of violence caused by inmates and suffered an injury. Compare *id.* at 220 n.6. Indeed, though the *Conroy* court was required to resolve the question whether an attempted escape constituted an act of violence within the meaning of the statute, no similar question or ambiguity is present here — the actions of the inmates that precipitated Presby's response were unquestionably violent.

Accordingly, we conclude that Presby is entitled to assault pay, as his injuries did result from an act of violence within the meaning of the statute as developed by the reasoning of the court in *Conroy* v. *Boston, supra*.

*Judgment affirmed.*

*Robert M. Novack* for the defendants.
*Robert Stewart* for the plaintiff.

