JOSEPH D. DALUZ, JR. *vs.* DEPARTMENT OF CORRECTION
(and a companion case[1]).

Barnstable. February 8, 2001. - April 25, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Arbitration,* Award, Claim preclusion. *Correction Officer. Labor,* Arbitration. *Statute,* Construction.

Parties to a binding arbitration proceeding under a collective bargaining agreement were precluded from maintaining a separate civil action for claims under a statutory provision incorporated in the agreement that were identical to the claims submitted to arbitration. [44-48]

This court concluded that G. L. c. 30, § 58, as it pertains to disabled employees entitled to assault pay benefits, does not permit any reduction in such benefits based on partial disability status. [48-50]

CIVIL ACTIONS commenced in the Superior Court Department on June 11, 1997.

The cases were heard by *Richard F. Connon,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Edward J. DeAngelo,* Assistant Attorney General, for Department of Correction.

*Paul J. Adams (Daniel F. Clifford, Jr.,* with him) for the plaintiffs.

*Matthew E. Dwyer & Joseph S. Fair* for Massachusetts Correction Officers Federated Union, amicus curiae, submitted a brief.

COWIN, J. We decide two issues in this appeal: (1) whether the doctrine of claim preclusion bars subsequent court proceedings after judicial confirmation of an arbitrator's ruling on the subject of assault pay benefits; and (2) the proper calculation of assault pay benefits due certain partially disabled employees of the

[1]Raymond Perry *vs.* Department of Correction.

Commonwealth. The plaintiffs, two members of the Massachusetts Correction Officers Federated Union (union), commenced separate actions in the Superior Court against the Department of Correction (department). The plaintiffs sought to enjoin the department from reducing[2] their assault pay benefits under G. L. c. 30, § 58, while they were collecting workers' compensation benefits under G. L. c. 152.[3] The plaintiffs and the department filed cross motions for summary judgment on the issue of liability. The Superior Court allowed the plaintiffs' motions.[4] The department filed a timely notice of appeal, and we transferred the case to this court on our own motion. We vacate the summary judgments entered in these cases and remand to the Superior Court for the entry of summary judgments for the department.

*Background.* The essential facts are not in dispute. The plaintiffs, Joseph D. DaLuz, Jr., and Raymond Perry, were employed as correction officers within the department. In 1989, DaLuz and Perry suffered bodily injuries in separate instances of prisoner violence. As a result of these injuries, the plaintiffs initially collected full workers' compensation benefits pursuant to G. L. c. 152, § 34.[5] They also received assault pay benefits

---

[2]Although the complaints of DaLuz and Perry both allege that the department "discontinued" assault pay benefits, they also allege that the department violated G. L. c. 30, § 58, by "reducing" the amount of assault pay benefits. However, a joint pretrial memorandum of agreed facts, which appears in each case, provides that the department "discontinued" payment of assault pay benefits to each plaintiff based on the Department of Industrial Accident's (DIA's) assignment of an earning capacity.

[3]The plaintiffs also sought monetary damages.

[4]Although the plaintiffs filed their actions separately, they filed identical claims in the Superior Court. Consequently, when each moved for summary judgment, and the department responded, the judge issued a "combined" memorandum and order although he did not appear to consolidate the cases.

[5]General Laws c. 152, § 34, as appearing in St. 1991, c. 398, § 59, provides, in pertinent part: "While the incapacity for work resulting from the injury is total, during each week of incapacity the insurer shall pay the injured employee compensation equal to sixty percent of his or her average weekly wage before the injury . . . ." At the time of DaLuz and Perry's injuries in 1989, however, the workers' compensation rate was "two-thirds" rather than "sixty percent" of the average weekly salary. See St. 1985, c. 572, § 42.

Using a hypothetical numeric example, under the current version of § 34, if an employee's weekly salary were $500 before the injury and that employee

pursuant to G. L. c. 30, § 58 (assault pay benefits statute),[6] which provides a supplement to workers' compensation for employees of the Commonwealth who are injured as a result of "acts of violence of patients or prisoners." Pursuant to the assault pay benefits statute, the plaintiffs were entitled to receive "the difference between the weekly cash benefits to which [they] would be entitled under [workers' compensation] and [their] regular salary."[7] Subsequently, their cases were heard by the Department of Industrial Accidents (DIA), as a result of which their workers' compensation benefits were modified from total to partial disability pursuant to G. L. c. 152, § 35. Based on this modification of benefits, the department took the position that DaLuz and Perry were no longer entitled to assault pay benefits and thus terminated the benefits.

The union filed a class action grievance[8] under its collective bargaining agreement (agreement) with the department. The grievance asserted that partially disabled members are entitled to assault pay benefits under the agreement and that the department's termination of assault pay benefits violated the agreement.[9] The contractual provision for assault pay benefits in the agreement, art. 8, § 1 (O) (paragraph O), provides in pertinent part:

became totally disabled, he or she would receive workers' compensation benefits of $300.

[6]General Laws c. 30, § 58, provides, in pertinent part: "[A]n employee who, while in the performance of duty, receives bodily injuries resulting from acts of violence of patients or prisoners in his custody, and who as a result of such injury would be entitled to benefits under [the workers' compensation act], shall be paid the difference between the weekly cash benefits to which he would be entitled under [the workers' compensation act] and his regular salary, without such absence being charged against available sick leave credits."

[7]Using the numeric example in note 5, supra, a totally disabled employee earning a preinjury salary of $500 would be entitled to receive workers' compensation benefits of $300, and assault pay benefits of $200. Thus, the assault pay benefits statute enables the totally disabled employee to receive his total preinjury salary.

[8]As a class action, the grievance was filed on behalf of the entire bargaining unit. DaLuz and Perry were members of said bargaining unit. The grievance also included DaLuz as a named party.

[9]Although the DIA did not review Perry's case and assign him an earning capacity until December, 1993, Perry, as a partially disabled member of the union, was included as a member of the class action grievance, which was not heard by the arbitrator until February, 1996.

"An employee who while in the performance of his/her duties receives bodily injuries resulting from acts of violence of patients or prisoners in his/her custody, and who as a result of such injury would be entitled to benefits under [G. L. c. 152] of the General Laws shall, if entitled under [G. L. c. 30, § 58], be paid the difference between the weekly cash benefits to which he/she would be entitled under said [c. 152] and his/her regular salary without such absence being charged against available sick leave credits, even if such absence may be for less than six (6) calendar days duration."[10]

At the arbitration hearing, in February, 1996, the department pursued two alternative positions: first, that termination of assault pay benefits for eligible partially disabled employees who are assigned an earning capacity does not violate the agreement; and second, that, if such termination of assault pay benefits does violate the agreement, then partially disabled employees are entitled only to an amount of assault pay benefits that is reduced by the assigned earning capacity. (When the DIA finds that an employee is partially disabled, it assigns that person an "earning capacity," that is, the amount of money that the employee is determined to be capable of earning despite the partial disability, and adjusts the amount of workers' compensation benefits.)[11] Interpreting paragraph O, the arbitrator agreed with the union and ruled that the department's termination of assault pay benefits for partially disabled union members

[10]Although the agreement does not appear in the record, it is not disputed that this is the language at issue. The relevant portion of the agreement, paragraph O, is quoted in full in the opinion of the arbitrator, which is part of the record.

The plaintiffs maintain that, because the agreement was not made part of the record, there is a lack of record support to determine whether the agreement granted the arbitrator authority to interpret G. L. c. 30, § 58. This litigation, however, has proceeded on the assumption that the arbitrator had the authority to interpret the contract; it cannot now be argued that there is a lack of record support for that authority.

[11]Using the numeric example in note 5, *supra*, if a totally disabled employee (with a preinjury salary of $500 and a postinjury workers' compensation benefit of $300) were subsequently determined to be partially disabled with an earning capacity of $100, his or her benefits would be $240, or sixty percent of $400, the difference between the $500 average wage and the $100 earning capacity.

violated the agreement. With respect to the amount of assault pay benefits due under the agreement, however, the arbitrator agreed with the department and ruled that assault pay benefits "for partially disabled employees should be the difference between the employee's regular base salary minus their weekly cash benefit *and their assigned earning capacity*"[12] (emphasis supplied). In September, 1996, on the union's motion, the arbitrator's award was confirmed by the Superior Court pursuant to G. L. c. 150C, § 10.[13] Neither the union nor the department appealed from the confirmation order. The department then complied with the arbitrator's award in calculating assault pay benefits and providing retroactive benefits to the affected union members.

In June, 1997, the plaintiffs filed separate actions claiming that the department breached G. L. c. 30, § 58. On cross motions for summary judgment, the motion judge ruled (1) that the plaintiffs' claims were not barred by the doctrine of claim preclusion; and (2) that the plain meaning of G. L. c. 30, § 58, does not permit any reduction of assault pay benefits based on partial disability status. We conclude that claim preclusion bars the plaintiffs' claims. We nevertheless determine that G. L. c. 30, § 58, does not permit any reduction in assault pay benefits based on partial disability status. Thus, although we determine that the arbitrator improperly interpreted the statute, his decision is binding on the parties who chose to arbitrate the issue.

1. *Claim preclusion.* " 'When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has.' *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. 34, 36-37 (1987), quoting Restatement (Second)

---

[12]Using the numeric example from note 5, *supra*, under the arbitrator's formula, the partially disabled employee (with a preinjury salary of $500 and earning capacity of $100) would be entitled to assault pay benefits of $160, the difference between preinjury salary ($500), less the earning capacity ($100), and the workers' compensation benefits ($240).

[13]General Laws c. 150C, § 10, provides, in pertinent part: "Upon application of a party, the superior court shall confirm an award, unless within the time limits, hereinafter imposed grounds are urged for vacating, modifying or correcting the award . . . ."

of Judgments § 84 comment c (1982)." *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992). Three elements are essential for invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits. *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 280 (1933). The first and third elements are clearly met here. At least for the purposes of this action, DaLuz and Perry, as union members, were in privity with their union, which is the recognized collective bargaining representative of the employees of the department in their bargaining unit. There was a final judgment on the merits when the Superior Court confirmed the arbitration award and the parties did not appeal. We turn, then, to the second element, which constitutes the central issue: whether the plaintiffs' claims under G. L. c. 30, § 58, are identical to the claim their union previously submitted to arbitration.

Normally, the arbitration award, having been reduced to judgment, would have preclusive effect. Here the plaintiffs make claims under a statute, G. L. c. 30, § 58, as opposed to a collective bargaining agreement. But the agreement incorporates the statute, and provides that disputes under the agreement (and thus any claims under the statute) will be arbitrated. The plaintiffs claim, however, that a separate cause of action may be brought under the statute, i.e., having lost in part under the agreement, they now claim that the arbitrator's interpretation of the statute, to the extent the statute is incorporated into the agreement, was wrong and that his decision is therefore not binding on a claim under the statute.

The arbitrator was asked to decide whether partially disabled union members are entitled to assault pay benefits and, if so, how much. In order to resolve these issues, the arbitrator was required to interpret paragraph O of the agreement. Paragraph O explicitly incorporates G. L. c. 30, § 58. Moreover, as the arbitrator noted in his opinion, G. L. c. 30, § 58, is a "mirror image" of, and "virtually identical" to, paragraph O.[14] By incorporating G. L. c. 30, § 58 and tracking the statute's

---

[14]The only differences between the text of paragraph O and the text of the statute are: (1) paragraph O includes language incorporating G. L. c. 30, § 58; (2) paragraph O adds feminine pronouns; and (3) the final clause of the statute

language, it is clear that the agreement was intended to provide the exact same assault pay benefits as those available under the statute. Consequently, when the arbitrator decided the amount of assault pay benefits due under paragraph O, he necessarily decided the same issue presented by the plaintiffs' present claims: the scope of assault pay benefits available under G. L. c. 30, § 58. Thus, the claims are identical to the claim previously arbitrated by the plaintiffs' union and are barred by the doctrine of claim preclusion.[15]

The plaintiffs contend that claim preclusion still does not apply here because the right to assault pay benefits is a personal, substantive, and nonwaivable statutory guarantee under § 58. They contend that they have a separate right under the statute. See *Blanchette* v. *School Comm. of Westwood,* 427 Mass. 176 (1998). The case of *Rooney* v. *Yarmouth,* 410 Mass. 485 (1991), controls our decision here.

In the *Rooney* case, we concluded that creation of a right to salary increases for voluntary completion of advanced education and training under G. L. c. 41, § 108L, was not a "personal, substantive, nonwaivable statutory guarantee" capable of separate judicial enforcement notwithstanding incorporation in a collective bargaining agreement. *Id.* at 492. In reaching this conclusion, we distinguished other cases that have held certain statutory rights to be personal, substantive, and nonwaivable, because they set forth national or Statewide minimum standards or guarantees and, therefore, assume a public policy purpose of

provides that eligible injured employees will not have their absence charged against sick leave credits, even if such absence may be for less than "eight calendar days;" paragraph O reads "six (6) calendar days."

[15]We have recognized that an arbitrator's award may be vacated if it offends public policy or an express statutory provision. *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990), quoting *Lawrence* v. *Falzarano,* 380 Mass. 18, 28 (1980). See also *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93,* 420 Mass. 13, 16 (1995). We do not address whether the arbitrator's award could have been vacated as contrary to an express statutory provision. The union sought and obtained confirmation of the arbitrator's award, and judgment was entered confirming that award. The proposition that the award might have conflicted with the express statutory provision of G. L. c. 30, § 58, was not raised. The union is, therefore, precluded under the principles of claim preclusion from raising it now. The judgment as entered has preclusive effect.

advancing social policy. *Id.* See *Barrentine* v. *Arkansas-Best Freight Sys.*, 450 U.S. 728, 741 (1981), quoting *Tennessee Coal, Iron & R.R.* v. *Muscoda Local No. 123*, 321 U.S. 590, 602-603 (1944) (noting Congress intended Fair Labor Standards Act to "achieve a uniform national policy"); *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 51-52 (1974) (rejecting proposition that employees may waive rights under Title VII of the Civil Rights Act because Congress intended to guarantee individual's right to equal employment opportunities). See also *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 392, 399 (1979) (statutory right to equal employment stands on "different footing" from other waivable statutory rights).

These nonwaivable rights are unlike the right here at issue, the right of a limited class of Commonwealth employees to receive additional pay for injuries due to assaults. Like the right to supplemental pay created by G. L. c. 41, § 108L, the right to assault pay benefits involves only economic concerns.[16] See *Rooney* v. *Yarmouth, supra.* There is only a narrow area of general public policy statutes that would prevent an arbitrator's award from having claim preclusion effect. The present case is not one of these. Accordingly, the arbitrator's decision is final and binding. *Miles* v. *Aetna Cas. & Sur. Co., supra* at 427 (discussing preclusive effect of arbitration decision).

Moreover, similar to the situation in the *Rooney* case, DaLuz and Perry do not have in § 58 an independent statutory right that is unencompassed by the agreement. Paragraph O incorporates G. L. c. 30, § 58, as a term of the agreement. Because of this incorporation, an arbitrator could interpret § 58. *Rooney* v. *Yarmouth, supra* at 492. See *Moss* v. *Department of Mental Health*, 159 Mich. App. 257, 263 (1987) (ruling incorporation of assault pay benefits statute in provision of collective bargaining agreement "substantially merged" statutory and contract right). Consequently, by agreeing to the incorporation of G. L. c. 30, § 58, into the agreement, the union effectively waived

---

[16]In analyzing a similar assault pay benefits statute, the Court of Appeals of Michigan also concluded that the right conferred by the statute was not in the same class of rights previously recognized as nonwaivable. *Moss* v. *Department of Mental Health*, 159 Mich. App. 257, 264 (1987).

any right DaLuz and Perry "may have had to judicial relief" based on § 58. *Rooney* v. *Yarmouth, supra* at 494.

The plaintiffs rely on *Blanchette* v. *School Comm. of Westwood, supra,* for the proposition that previous arbitration of a contractual right does not raise the bar of claim preclusion to enforce the same statutory right. That case, however, was a discrimination case concerning two different sets of rights: the private contractual rights set forth in the collective bargaining agreement (which prohibited discrimination based on, inter alia, "sex") and the statutory civil rights to be free from discrimination in the workplace set forth in G. L. c. 151B, § 4 (4) (which prohibits retaliation against persons who have opposed a discriminatory practice). *Id.* at 180-181. The language and scope of the rights granted by the statute differed from those of the contract. The arbitrator in the *Blanchette* case expressly recognized that her opinion and award pertained only to "contractual violations" and that there may have been additional "statutory [civil rights] violations" that she did not address. The arbitrator thus did not hear Blanchette's civil rights claim. Accordingly, we rejected the application of claim preclusion because the rights involved had not been the subject of "full litigation and careful decision." *Id.* at 181. By contrast, paragraph O and G. L. c. 30, § 58, address exactly the same set of rights. Indeed, the contract and statute are virtually identical.[17]

2. *Statutory interpretation.* Although not necessary to our decision, we take this opportunity to interpret G. L. c. 30, § 58, as it pertains to partially disabled employees entitled to assault pay benefits. The parties have briefed and argued the issue, and it will be useful to resolve any doubt as to the statute's meaning and thereby reduce the need for further litigation on this matter. See *Pinnick* v. *Cleary,* 360 Mass. 1, 3 (1971), citing *School Comm. of Boston* v. *Board of Educ.,* 352 Mass. 693, 697 (1967)

---

[17]Nor is there any support for the plaintiffs' position in *Larson* v. *Larson,* 30 Mass. App. Ct. 418 (1991), which concerns contempt proceedings for nonpayment of support during successive periods. In that case, the Appeals Court concluded that claim preclusion does not apply when a payment obligation is continuing and each payment represents a separate obligation. *Id.* at 426-427. By contrast, the present suit, like the class action arbitration before it, is essentially one for a declaratory judgment that will bind these parties in the future.

("where questions of pressing public importance are involved we may in our discretion express our opinion on matters fully argued even though they are not essential to disposition of the exact controversy before the court").

"[S]tatutory language itself is the principle source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). "Where the language of a statute is plain, the courts enforce the statute according to its wording." *Weitzel v. Travelers Ins. Co.*, 417 Mass. 149, 153 (1994). The words of G. L. c. 30, § 58, are plain. As the Superior Court judge noted, the language of the statute does not distinguish between total and partial workers' compensation benefits. The statute requires that assault pay benefits constitute the difference between the amount paid as workers' compensation benefits (whether for full or partial disability) and the employee's regular salary, i.e., assault pay benefits plus workers' compensation benefits must equal in all cases the employee's regular salary. The statute does not provide that assault pay benefits will be reduced by the amount of the injured employee's earning capacity.

We recognize that the statutory language appears to create an anomaly: a partially disabled employee injured by violence of a prisoner or a patient may recover more assault pay benefits than a totally disabled employee.[18] This interpretation also permits a partially disabled employee to earn more than his or her regular salary, if such employee does in fact obtain other employment and thereby acquires earnings in addition to benefits. Nevertheless, we cannot conclude that the Legislature did not intend such a result. It would not be unreasonable for the Legislature to provide such a comprehensive benefit for employees who are exposed to an occupational risk of violent injury. It appears that it is the Legislature's objective to ensure that employees injured by the violence of prisoners or patients do not suffer any loss as a result of such injury. Reduction of assault pay benefits by the amount of the injured worker's earning capacity would result in

---

[18]A partially disabled employee (with a preinjury salary of $500 and an earning capacity of $100) would receive $240 in workers' compensation benefits and $260 in assault pay benefits, and would presumably be able to earn an additional $100. A totally disabled employee would receive $300 in workers' compensation benefits and $200 in assault pay benefits.

such a loss for any worker who did not actually obtain a job paying him or her the full amount of that earning capacity. To whatever extent that workers' compensation benefits are not by themselves sufficient to make the employee whole, assault pay benefits will make up any difference. We interpret the statute in accordance with its literal wording.[19]

3. *Conclusion.* The Superior Court judge correctly determined that the language of G. L. c. 30, § 58, does not permit any reduction of assault pay benefits for partial disability status. He erred in his conclusion that the arbitration award did not have preclusive effect. Thus, although we conclude that the arbitrator incorrectly interpreted the statute, claim preclusion renders the arbitrator's ruling binding on the parties who agreed to have their dispute referred to arbitration.

The judgments of the Superior Court are vacated, and the cases are remanded to the Superior Court for the entry of summary judgments for the department.

*So ordered.*

---

[19]We note that the Appeals Court has reached the same conclusion in *Dunne* v. *Boston*, 41 Mass. App. Ct. 922, 922-923 (1996), which considered a similar assault pay benefits statute applicable to employees of the city of Boston, leaving "it to the city to make [an equity] argument to the Legislature." *Id.* at 923.