Fremont-Smith, Thayer, J.
The defendant performed laparoscopic gall bladder surgery on Lillian Frongillo at the Brigham & Women’s Hospital on January 18, 2002 and was her attending surgeon during her hospitalization at the Brigham & Women’s Hospital until her death on April 22, 2002.
In order to legally perform the surgery on Lillian Frongillo and to serve as her attending physician, it was required that the defendant have a valid license to practice medicine issued by the Board of Registration in Medicine and have staff privileges at the Brigham & Women’s Hospital at the time. Defendant does not dispute that he was convicted of operating a motor vehicle while under the influence of alcohol in 1985, in 1991, in 2000 and in 2001, but answered “no” to the question “have you ever been a defendant in any criminal proceedings other than a minbr traffic violation?,” [1] when he applied for a medical license in 1993, 1994, 1995, 1996, 1997, 1998 and 2001.
The relevance of an applicant’s misstatements in an application for a license is clear. In State of Kansas v. Hines, 178 Kan. 142, 283 P.2d 472 (1955), the Court *348 affirmed an injunction against a store which sold alcoholic beverages because the liquor license had been procured by fraud in the application for license. Further, courts considering the falsification of credentials by an expert witness have uniformly held that, since qualifications go to the very core of the credibility of a professional witness, not only are the misrepresentations admissible at trial, but the misrepresentation of an expert which was discovered only after a verdict, necessitated a new trial. See United States v. Jones, 84 F.Sup.2d 124 (D.D.C. 1999), and State of Wisconsin v. Plude, 310 Wis.2d 28, 750 N.W.2d 42 (2008). Thus, the fact that the defendant here repeatedly misstated his criminal history for driving under the influence on his application for license may be considered not only as to his credibility as a witness but also as to the validity of his medical license and the validity of his staff privileges at the Brigham and Women’s Hospital.
In the Consent Order, defendant agreed that the order had “all the force and effect of a ’’Final Decision" and that “the Respondent admits to the findings described below and agrees the Board may make conclusions of law and issue sanctions based thereon.”
The Board found and concluded that “the Respondent has violated G.L.c. 112, §5(a) and 243 CMR 1.03(5)(a)(l), in that he fraudulently procured his certificate of registration and the renewal of his medical license by providing false answers on his applications” (emphasis added). The Board also found that defendant had misinformed the hospital in that regard and was suspended from hospital privileges, as a result.[2]
This Court rules that the agreed findings of fact in the “Consent Order” are admissible as admissions of a party and are relevant to the validity of his medical license and hospital privileges. Even those paragraphs of the Consent Order headed “Conclusions of Law” moreover are, in many instances, actually mixed questions of fact and law. Although described as a “conclusion of law,” para. 13’s finding that “he fraudulently procured his certificate of registration and the renewal of his medical license by providing false answers on his application,” is tantamount to a finding of fact admitted by the defendant. Accordingly, the “Consent Order,” when properly authenticated as an official document, will be admissible.[3]
Nor is there any merit to defendant’s contention that the communications (or in this case, defendant’s lack of candid communications) with the Board and with the hospital are somehow privileged as peer review communications under G.L.c. Ill, §§204(a) and 205(b). In Vranos v. Franklin Medical Center, 448 Mass 425 (2007), the Court held that communications by physicians who had complained about Vranos’s misconduct as a hospital staff member and who, as a result, was terminated from the hospital, were privileged as peer review communications. In so holding, however, the Supreme Judicial Court held (at 434):
Taken together, G.L.c. Ill, §§204(a) and 205(b), provide weighty protection to a medical peer review committee’s work product and materials. They express the Legislature’s consideredjudgment that the quality of health care is best promoted by favoring candor in the medical peer review process. Necessarily, the interest of the general public in quality health care are elevated over the interest of individual health care professionals in unfettered access to information about peer review of their actions.
(Emphasis added.)
If the purpose behind G.L.c. 111 is to “favor candor in the medical peer review process,” for this Court to exclude the evidence of defendant’s lack of candor and his abuse of the process, would stand the statute on its head. Such an exclusion would “favor” not “candor,” but the opposite.
Defendant further contends that even if the Consent Order itself is admissible, those portions of the Consent Order which make findings as to actions taken by the Peer Review Committee of the hospital should be redacted from the Consent Order which will be provided to the jury.[4] Not only do these findings comprise admission of the defendant, but G.L.c. Ill, §205(h) exempts from confidentiality matters disclosed at an adjudicatory hearing of the Board. And while c. 111 itself contains no definition of “adjudicatory proceeding,” the Board’s proceeding in regard to defendant meets the definition of “adjudicatory proceeding” contained in G.L.c. 30A.[5]
In addition, defendant waived any privilege as to his admissions and the Board’s findings, as he agreed that the Consent Order was not to be kept confidential but, on the contrary, was to be disseminated to nearly all near-by medical facilities, including those entities in which he did not practice medicine.[6]
Plaintiff contends that the “Consent Order” should also have preclusive effect, i.e., comprise collateral estoppel on this issue. In Kobin v. Board of Registration in Medicine, 444 Mass. 837 (2005), the Board had found in an earlier proceeding that Kobin was not shown to have provided substandard medical care and dismissed those charges. Kobin argued that this precluded the Board from disciplining him for later alleged fraud as to Medicare reimbursement. In regard to this argument, the Court said:
The term “res judicata” includes both claim preclusion and issue preclusion. See Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988). Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action. O’Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998), quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 179 n.3 (1998). This is based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first *349 lawsuit. O’Neill v. City Manager of Cambridge, supra, quoting Heacock v. Heacock, supra at 24. The invocation of claim preclusion requires three elements: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits. DaLuz v. Department of Correction, 434 Mass. 40, 45 (2001), quoting Franklin v. North Weymouth Coop. Bank, 283 Mass. 275, 280 (1933).
Similarly, “issue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.” Heacock v. Heacock, supra at 23 n.2. Before precluding a party from relitigating an issue, a court must determine that (1) there was a final judgment on the merits in the prior adjudication: (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998), and cases cited. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment. Id. at 134-35, and cases cited. Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. See Fidelity Mgt. Research Co. v. Ostrander, 40 Mass.App.Ct. 195, 199 (1996).
Moreover, it is not necessary that the prior adjudication have been before a court. Rather, if the proponent for preclusion proves that the elements for preclusion are met, [a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction. Tuper v. North Adams Ambulance Serv., Inc., supraat 135, quoting Stowe v. Bologna, 415 Mass. 20, 22 (1993).
Id. at 843-44.
Here, “the incentive and opportunity to litigate the matter fully” before the Board was certainly present, defendant was represented by counsel and the same issue (whether he procured his license by fraud) was decided by the Board. Defendant also agreed that the Consent Order was “final” and non-appealable.
However, it is nevertheless unclear whether the Consent Order qualifies as an “adjudicated final judgment.”
In the Restatement of Judgments (Second), Comment e to §27 (1982), it is stated:
In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.
It should be noted that, although issue preclusion does not apply to issues not actually litigated, there is a concept of estoppel in pais, not dealt with in this Restatement, which may be applicable in appropriate cases. Under this concept, a person who makes a representation may be estopped to deny its truth if the person to whom it was made has changed his position in reliance.
Accordingly, although the issue in these circumstances may not be entirely beyond question, the Court rules that collateral estoppel does not bar defendant from relitigating the issue of whether he fraudulently procured his medical license and his staff privileges at the hospital.
ORDER
Defendant’s motions in limine, insofar at they seek exclusion from evidence of defendant’s past DUI convictions in connection with his faulty applications for his medical license and hospital privileges, and seek the exclusion from evidence of the Board of Registration’s Consent Order, are DENIED. The plaintiff, moreover, may argue to the jury those facts as bearing on the question of whether defendant had an invalid medical license or was invalidly credentialed to the medical staff of the Brigham & Women’s Hospital at the time he provided medical care to Lillian Frongillo. Defendant, however, is not precluded by the Consent Order from contesting the above.[7]

M.G.L.c. 90, §24 imposes up to 2 1/2 years in the House of Correction for a first offense and up to 5 years in prison for subsequent offenses such as committed by the defendant here. This could not in any way be considered a “minor traffic violation.” The Board’s instructions, moreover, provided that “A charge of Driving Under the Influence is not a minor traffic offense and should be reported.” Defendant notified the Board of Registration of his 2001 conviction in 2003, resulting in his denial of reappointment to the medical staff of Brigham & Women’s Hospital in 2003 and the suspension of his medical license by the Board of Registration in December 2003. The suspension was later “stayed” and defendant was allowed to resume the practice of medicine under supervision and under other conditions. The suspension was re-imposed in 2006.

Consent Order: “findings of fact," paras. 1, 8, 11 and 12.

In this respect, the situation differs from that in Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 792-93 (1996), where the Court, in footnote 10, likened citations for violations of OSHA to “unsubstantiated charges” and an “arrest record,” and held them to be inadmissible as “public records.” The “Consent Order” here was not a mere citation, complaint or charge of misconduct, but constituted a final decision of the Board finding misconduct.

The Consent Order contains a number of findings of fact concerning credentialing actions taken by the hospital with regard to the defendant.

G.L.c. 30A, §1 defines it as follows:
(1) “Adjudicatory proceeding” means a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional *350 right or by any provision of the General Laws to be determined after opportunity for an agency hearing.

The Consent Order provides that:
The Respondent shall provide a complete copy of this Consent Order with all exhibits and attachments within ten (10) days by certified mail, return receipt requested, or by hand delivery to the following designated entities: any in- or out-of-state hospital, nursing home, clinic, other licensed facility, or municipal, state, or federal facility at which he practices medicine; any in- or out-of-state health maintenance organization with whom he has privileges or any other kind of association; any state agency, in- or out-of-state, with which he has a provider contract; any in- or out-of-state medical employer, whether or not he practices medicine there; and the state licensing boards of all states in which he has any kind of license to practice medicine. The Respondent shall also provide this notification to any such designated entities with which he becomes associated for the duration of this Consent Order. The Respondent is further directed to certify to the Board within ten (10) days that he has complied with this directive.

As this Order raises difficult and previously undecided issues as to the admissibility of a Board of Registration’s Consent Order and of particular statements contained therein, and as to whether the Board’s findings have preclu-sive effect, the resolution of which issues so affects the controversy that an interlocutory appeal should be had, a status conference is scheduled at which counsel should be prepared to discuss not only the advisability of a Report of this Order to the Appeals Court, but also which pleadings should be designated as exhibits for the record on appeal. Counsel are requested to provide, by agreement if possible, a proposed list of such exhibits.