340         75 Mass. App. Ct. 340 (2009)

Sheriff of Suffolk County *v.* AFSCME Council 93, Local 419.

## SHERIFF OF SUFFOLK COUNTY *vs.* AFSCME COUNCIL 93, LOCAL 419.

No. 07-P-885.

Suffolk. April 10, 2008. - October 1, 2009.

Present: PERRETTA, MILLS, & RUBIN, JJ.

*Arbitration,* Arbitrable question, Judicial review, Scope of arbitration, Collective bargaining. *Labor,* Grievance procedure, Collective bargaining. *Contract,* Arbitration, Construction of contract.

In an action brought under G. L. c. 150C, § 2(b), seeking a permanent stay of arbitration of a union's grievance under a collective bargaining agreement, a Superior Court judge erred in granting summary judgment in favor of the plaintiff, an employer, where, reading the agreement as a whole, the relevant and controlling terms failed to provide positive assurance that the employer did not agree to arbitrate a union's grievance, and therefore, the union's grievance was entitled to the presumption of arbitrability. [342-345]

CIVIL ACTION commenced in the Superior Court Department on March 12, 2004.

The case was heard by *Paul E. Troy,* J., on a motion for summary judgment.

*Joseph L. DeLorey* for the defendant.

*Timothy V. Dooling* for the plaintiff.

PERRETTA, J. In April, 2002, the Suffolk County sheriff determined that budget cuts required layoffs within the union's bargaining unit. Because of the necessary layoffs, the sheriff informed the union that some remaining employees would be assigned to different shifts with attendant changes in scheduled days off and vacations. The union has consistently taken the position that these changes were subject to arbitration under the collective bargaining agreement (agreement). The sheriff, maintaining that the agreement precluded arbitration of shift changes and scheduled days off, brought a complaint in the Superior Court seeking a permanent stay of arbitration pursuant to G. L. c. 150C, § 2(*b*).[1]

---

[1] The arbitrator retained jurisdiction of the union's grievance pending the outcome of the sheriff's complaint.

Treating the union's motion for judgment on the pleadings as one for summary judgment, the judge ruled in favor of the sheriff, see Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), and issued a judgment ordering a stay of arbitration on the union's grievance. Based upon our reading of the agreement as a whole, we conclude that the relevant and controlling terms of the agreement fail to provide positive assurance that the sheriff did not agree to arbitrate the union's grievance. Consequently, we remand the matter to the Superior Court for entry of a judgment requiring arbitration on the union's grievance.

1. *The grievance.* As alleged by the union on the requisite grievance form, the sheriff violated "Article X, section 9(A), but not limited [thereto]," of the agreement in that employees' "days off [were] changed without reason or regard to [the agreement]." Article X is entitled "HOURS OF WORK AND OVERTIME." Section 9 is labeled "Days-off Selection," and subsection A provides that selections are to be made on the basis of an employee's "seniority date with the Suffolk County Sheriff's Department."[2]

2. *The judge's decision.* In granting summary judgment to the sheriff, the judge concluded that there were no material facts in dispute and that the matter in controversy involved only a question of law. As identified in his detailed memorandum of decision, the question of law before him, and now before us on plenary review, see *Bank* v. *Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008), is whether the union's grievance presents a question of substantive rather than procedural arbitrability. As the judge acknowledged, a question of substantive arbitrability addresses "whether the parties agreed to submit the subject matter of a claim to arbitration." See *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court"). Judges determine arbitrability, not arbitrators whose role is to decide procedural issues and then to rule on the merits of a grievance determined to

---

[2]Article X, § 9.A., reads as follows: "Employees of each shift (6:45 AM to 3:15 PM, 2:45 PM to 11:15PM, and 10:45 PM to 7:15 AM) shall select their scheduled days-off based upon their seniority date with the Suffolk County Sheriff's Department as defined by this Agreement. These selections shall only be made after the shift selection process has concluded."

be arbitrable.[3] See *AT&T Technologies, Inc.* v. *Communications Wkrs.*, 475 U.S. 643, 651 (1986); *Green Tree Financial Corp.* v. *Bazzle*, 539 U.S. 444, 452 (2003); *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 374 (2005).

In concluding that the union's grievance brought under article X, § 9, was not arbitrable, the judge relied upon article X, § 9G, of the agreement which provides in full:

> "The Union agrees that disputes arising out of the *implementation* of this section are not subject to the grievance and arbitration procedure of the parties' collective bargaining agreement" (emphasis supplied).

The judge concluded that as used in § 9G, the word " 'implementation' . . . can be understood only to refer to ongoing acts of implementation." In reaching that conclusion, the judge focused on § 9F which speaks to the scheduling rights of those employees who "request a shift change, who transfer into the bargaining unit, or who (as in this case) are transferred 'to accommodate the operating needs of the institution.' " He reasoned that "[b]ecause § 9(F) speaks to changing circumstances, it would make no sense if [the word] 'implementation' were understood to mean a one-time event."

3. *Discussion.* The question before us, whether the union's grievance is arbitrable, turns on a matter of contract interpretation which is to be resolved by reading and construing the whole contract "in a reasonable and practical way, consistent with its language, background, and purpose." *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989), and cases therein cited. See *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 632 (1992). In construing the parties' agreement, we also look to the four bedrock principles of Federal arbitration law accepted in this Commonwealth as applicable in disputes as to whether a grievance is arbitrable. See *AT&T Technologies, Inc.*

---

[3]Procedural arbitrability comprehends questions such as allegations of waiver, delay, failure to comply with time limits, notice, laches, estoppel, questions that the parties would likely expect an arbitrator to decide as a gateway matter. See *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 377 (2005). Only when arbitration clauses explicitly exclude such gateway procedural disputes will a judge decide those procedural issues. *Id.* at 373 n.10, 376 n.11. Both parties now agree that the issue here is substantive.

v. *Communications Wkrs.*, 475 U.S. at 648; *Local No. 1710, Intl. Assn. of Fire Fighters* v. *Chicopee*, 430 Mass. 417, 420-421 (1999); *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. at 374. Those principles are: (1) "a party cannot be forced to submit to arbitration [a] dispute which he has not agreed so to submit"; (2) whether an agreement presents a duty to arbitrate is a question to be resolved by a judge; (3) when determining whether the parties have agreed to submit a specific grievance to arbitration, a judge is not to rule on the merits of the grievance; and (4) there is a presumption of arbitrability, that is, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Local No. 1710, Intl. Assn. of Fire Fighters* v. *Chicopee, supra* at 421, quoting from *AT&T Technologies, Inc.*, 475 U.S. at 648, 650.

Because the judge found "positive assurance" in article X, § 9G, that the union and the sheriff did not intend to arbitrate the present grievance or any other grievance brought under § 9, he determined that the union was not entitled to the presumption of arbitrability. See *Local No. 1710, Intl. Assn. of Fire Fighters* v. *Chicopee*, 430 Mass. at 421, quoting from *AT&T Technologies, Inc.* v. *Communications Wkrs.*, 475 U.S. at 650. Our reading of the whole agreement, see *Massachusetts Mun. Wholesale Elec. Co.* v. *Springfield*, 411 Mass. 39, 45-46 (1991); *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. at 632; *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. at 116, leads us to conclude that the sheriff failed to overcome the presumption of arbitrability to which the union was entitled. As held in *AT&T Technologies, Inc.* v. *Communications Wkrs., supra,* any doubts as to the question of substantive arbitrability are to be resolved in favor of allowing arbitration. Courts have held that "[the] presumption is successfully rebutted only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration." *Paper, Allied-Industrial, Chem. & Energy Wkrs. Intl. Union Local No. 4-2001* v. *ExxonMobil Ref. & Supply Co.*, 449 F.3d 616, 620 (5th Cir. 2006), quoting from *Communications Wkrs. of Am.* v. *Southwestern Bell Tel. Co.*, 415 F.2d

35, 39 (1969). Article V, § 1, of the agreement provides the sheriff with broad managerial powers. That section reads in full:

> "Subject only to the express provisions of this Agreement, the [sheriff] shall not be deemed to be limited in any way by this Agreement in the performance of the regular and customary functions of municipal management and shall have complete authority and supervision of the Suffolk County House of Correction . . . . The [sheriff] reserves and retains all common law, statutory and inherent rights including, without limitation the exclusive right of the [s]heriff . . . to issue rules and regulations and from time to time change, alter and add to such rules, governing all department operations and the conduct of Suffolk County House of Correction employees."

However, not every exercise of these broad managerial powers is exempt from arbitration. Article VII, entitled "GRIEVANCE PROCEDURE," states in § 1 that "[o]nly matters involving the question whether the [sheriff] is complying with the express provisions of this Agreement shall constitute [a] grievance[]." As earlier related in part 1, *supra*, the union specified on the required grievance form, "Officers days off [were] changed without Reason or Regard to [article X, § 9A, of the agreement]." That allegation was sufficient to trigger the grievance procedures set out in article VII, §§ 2A-2C (steps one through three), with the sheriff successfully arguing at each level that the grievance was not arbitrable and refusing to proceed to article VII, § 26, step three, arbitration.

Another example of a limitation on the sheriff's managerial powers is contained in article VI, entitled "DISCIPLINE AND DISCHARGE." Sections 2 and 3 of that article allow for arbitration in the circumstance therein recited.[4] It is also apparent from the agreement that as used in article XXII, an article concerning "DRUG TESTING," that the word "implementation" is used in

---

[4]Article VI, §§ 2 and 3, pertain to an employee's right to arbitration on grievances concerning matters relating to an employee's discipline or discharge. Those sections read as follows:

"Section 2. When an employee who is eligible to appeal his grievance under Chapter 135 of the Acts of 1960 ['An Act Protecting Certain Officers and Employees in the Suffolk County Jail Against Arbitrary Removal'] or otherwise under the preceding sentence [i.e., the retirement law or any other

reference to what could be understood to mean a one-time only occurrence.[5]

On the other hand, article XXI, entitled "PROBATION AND PROMOTION," provides clear demonstration that the parties to the agreement knew how to exclude a managerial decision from arbitration in clear and unequivocal terms. Section 9 of article XXI reads in full:

> "Promotional decisions *shall not* be subject to challenge under the grievance and arbitration procedure of the Agreement, except in those instances where the Sheriff has exercised his right to remove a person from the promotion list" (emphasis supplied).

In considering the entire agreement rather than limiting our focus to article X, § 9, we found no "positive assurance" because the agreement provides some support to the positions of the union and the sheriff. Consequently, we conclude that the union was entitled to the "presumption of arbitrability." See *AT&T Technologies, Inc.* v. *Communications Wkrs.*, 475 U.S. at 650; *Paper, Allied-Industrial, Chem. & Energy Wkrs. Intl. Union Local No. 4-2001* v. *ExxonMobil Ref. & Supply Co.*, 449 F.3d 620, and cases therein cited.

4. *Conclusion.* It follows from what we have said that the

statutory appeal procedure] elects to proceed under the grievance and arbitration procedure with the Union's approval, such dispute may be processed under the contract grievance and arbitration procedure, in which case the contract grievance and arbitration procedure shall be the exclusive procedure for resolving such grievance in accordance with G. L. c. 150E, § 8.

"Section 3. In the event of group discipline arising out of the same incident, the dispute shall not be processed under the contract grievance and arbitration procedure unless all the employees subject to the group discipline so elect to proceed thereunder."

[5]Article XXII, § 9, is entitled "Implementation" and reads in full:

> "The [sheriff] will meet with the union to discuss the procedures for drug testing, specifically vendor qualifications and RFP, specimen collection procedures, reporting and review of results, a fair and equitable random selection procedure for follow-up urinalysis testing, and protection of personnel records. The [sheriff] will provide the union with a minimum eight-month notification period prior to *the implementation of this program*, and shall provide all bargaining unit members with a basic level of drug and alcohol educational training in advance of the implementation of this program" (emphasis supplied).

judgment of the Superior Court is reversed. The matter is remanded to the Superior Court for the entry of a new judgment granting the union's motion for summary judgment, vacating the order staying arbitration, and ordering that the matter be remanded to the arbitrator for resolution of the union's arbitrable grievance brought under article X, § 9A.

*So ordered.*