NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-31

PATRICK FURNARI

vs.

JOHN S. HOLDEN, THIRD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Patrick Furnari, appeals from an order dismissing his complaint against the defendant, John Holden, for failure to state a claim.  See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).  Furnari's complaint alleged that an offer he received from Holden triggered a clause in their corporation's operating agreement that entitled Furnari to purchase Holden's interest in the corporation, that Holden breached the agreement by refusing to sell, and that Furnari was entitled to specific performance.  A Superior Court judge ruled that Furnari was not plausibly entitled to relief because Holden's offer did not satisfy the conditions of the contract clause it purportedly

invoked.  For essentially the same reasons given by the judge in her thoughtful memorandum of decision, we affirm.

Background.  "In considering whether a count in a complaint survives a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), we accept as true the factual allegations in the complaint and the attached exhibits [and] draw all reasonable inferences in the plaintiff's favor."  Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 17 (2018).

As set forth in the complaint and exhibits, Furnari and Holden are the sole shareholders of JH Valve Realty, LLC (JHV).  They own forty-nine percent and fifty-one percent interests, respectively.  JHV is governed by an operating agreement, to which JHV, Furnari, and Holden are parties.  Section 7.07 of the agreement is the provision at the center of this case, a buyout clause that the parties call the "shotgun clause."  Under the shotgun clause, when there are only two members of the corporation (as appears to have always been the case), either member may offer to buy out the other's entire interest for a stated price per each one percent that the other member owns.  The member receiving the offer must either sell at the stated price per one percent or may instead elect, within thirty days, to buy the offering member's entire interest at the same price per one percent.  The pertinent language is reproduced in the

2

footnote below.[1]  The provision continues by stating that the member being bought out shall retire from any position in the corporation and that the purchase price will be paid by a promissory note, with specified terms depending on the price paid.

The parties became entangled in a dispute involving a lease agreement between JHV and Automatic Machine Products (AMP).  On May 25, 2023, counsel for Furnari e-mailed counsel for Holden an offer to settle the dispute.[2]  Counsel for Holden responded with an e-mail message dated June 1, 2023, headed, "Settlement Offer

---

[1] "7.07 <u>Transfer of Interests if Two Members</u>.  In the event that there are only two Members of the LLC, a Member of the LLC may elect to purchase the interest of the other Member of the LLC by giving notice in writing to the other Member of his intention.  Such Member shall deliver to the other Member an offer notice stating in such notice the price per each one (1%) percent interest he is willing either to give for the other member's entire interest in the LLC or to accept for his entire interest if the other Member so elects.  The Member receiving such notice shall within thirty (30) days from the date thereof elect either to sell his entire interest or to purchase the entire interest of the other Member at the price per each one (1%) percent interest specified in the notice, and shall notify the Member giving the notice of his intention to buy such Member's Percentage Interest or to sell his own.  If the Member to who[m] said notice is given fails to make an election in writing within thirty (30) days after the service of the notice, then the Member giving notice may purchase the entire interest of the other Member upon the terms contained in the notice."

[2] Part of the email exchange was quoted in, but not attached to, the complaint.  It was, however, attached to the motion to dismiss, and it may be considered without converting the motion to dismiss to a motion for summary judgment.  See <u>Marram</u> v. <u>Kobrick Offshore Fund, Ltd.</u>, 442 Mass. 43, 45 n.4 (2004).

3

- Not Admissible," proposing "a true separation of the parties." The message continued, "To get a complete separation, [Holden] is offering $1,000,000 to buy out Mr. Furnari's share in JH Valve payable upon refinancing . . ., plus payment of the remain[ing] approximately $160,000 due from AMP (cash collateral).  The total $1,160,000.  We have a refinance proposal from a lender."

Eleven days later, Furnari responded, asserting that the June 1 e-mail messgae "constitute[d] a notice in writing from one Member to the other of an intent to purchase such Member's interest" under section 7.07, which gave Furnari the choice to sell his interest in JHV or to purchase Holden's interest. Dividing Holden's $1 million offer by forty-nine -- Furnari's percentage interest -- Furnari communicated his intent to purchase Holden's "entire 51% interest at the offered price of $20,408.17 per 1% interest equaling $1,040,816.67."  When Holden refused, Furnari initiated this action.

Discussion.  "We review the allowance of a motion to dismiss de novo."  Goodwin v. Lee Pub. Sch., 475 Mass. 280, 284 (2016).  To survive a motion to dismiss, the plaintiff must present "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief."  United Oil Heat, Inc. v. M.J. Meehan Excavating, Inc., 95 Mass. App. Ct. 579, 581

4

(2019), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

A question of law is presented when, as here, the dispute relates to the proper interpretation and application of a contract in light of undisputed facts.  See Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999). "The question . . . is to be resolved by reading and construing the whole contract 'in a reasonable and practical way, consistent with its language, background, and purpose.'" Sheriff of Suffolk County v. AFSCME Council 93, Local 419, 75 Mass. App. Ct. 340, 342 (2009), quoting USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, 116 (1989).

We readily conclude that Holden's global offer to settle all disputes among Furnari, Holden, JHV, and AMP, made in response to Furnari's narrower offer to settle just the dispute concerning AMP, did not trigger the shotgun clause.  The e-mail message did not cite section 7.07 and did not express an intention to invoke it.  It did not refer to the promissory note discussed in section 7.07, but instead proposed an entirely different mechanism for funding the settlement -- a refinance proposal from a lender.  And, importantly, it did not state "the price per each one (1%) percent interest" Holden was willing

5

either to give for Furnari's forty-nine percent interest or to accept for his own fifty-one percent interest.

Relying on the plain language of section 7.07, the motion judge determined that, because the requirement of delivering an offer notice stating the price per one percent is prefaced by the word "shall," a notice under section 7.07 cannot be effective unless it explicitly states the offer in those terms. The judge concluded that because the June 1 e-mail contained only a "single lump sum" of $1,000,000, the shotgun clause had not been triggered. Furnari counters that because the price per one percent was "easily calculable," reading the provision so mechanically as to require "an explicit statement of the simple mathematical calculation, i.e. '$20,408.17 per 1% interest,'" elevates form over substance. We agree with the motion judge.

"[A]s with any contract, we 'must construe all words that are plain and free from ambiguity according to their usual and ordinary sense.'" Boston Redev. Auth. v. Pham, 88 Mass. App. Ct. 713, 717 (2015), quoting Suffolk Constr. Co., 47 Mass. App. Ct. at 729. The word "shall, . . . in its popular and common meaning is imperative and mandatory." Rea v. Board of Aldermen of Everett, 217 Mass. 427, 430 (1914). See Hashimi v. Kalil, 388 Mass. 607, 609 (1983). Stating the offer in the mandated form of price per one percent interest is therefore a condition

6

precedent for invoking section 7.07. "It is an elementary rule in the interpretation of contracts that whenever reasonably practicable every word shall be given effect," Rocci v. Mass. Accident Co., 222 Mass. 336, 343 (1916), "and a reading of a contract which gives a reasonable meaning to all [its] provisions . . . is . . . preferred to one which leaves a part useless or inexplicable" (quotation and citation omitted). Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154, 158 (2005). Furnari's interpretation of the contract would completely disarm the language of the shotgun clause expressly requiring offers to be stated as a price per one percent interest.

Our interpretation of the plain language of the agreement is supported by common sense and "the probable intention of the parties" when they drafted it. Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 720 (1999), quoting Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964). Requiring the offered price to be stated in a precise form is a rational safety mechanism intended by the parties to keep the shotgun clause from accidentally firing. Dictating the specific manner in which a shotgun offer was to be made also ensured that such offers would be easily discernable from other communications between the parties in the course of business. Indeed, Furnari was keenly

7

aware of the risk of accidentally setting off the shotgun clause, as he found it necessary to expressly state that his response to the June 1 e-mail message "in no event shall . . . be construed to be an initial offer . . . under Section 7.07."

Case law in the analogous area of option rights further supports this conclusion. Like an option, section 7.07 "confers a unilateral right to compel performance" and "ripens into a bilateral purchase and sale contract" when effectively exercised. Lewis v. Chase, 23 Mass. App. Ct. 673, 676 (1987).[3] "Generally, conditions for the exercise of an option require a more strict degree of adherence than may be the case in provisions of a bilateral contract." Sourcing Unlimited, Inc. v. Cummings Properties, LLC, 102 Mass. App. Ct. 653, 659 (2023), quoting Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc., 10 Mass. App. Ct. 70, 73 (1980). Because section 7.07, when properly invoked, compels performance, it is not "too much to ask that a person seeking to exercise option rights turn his corners squarely." Westinghouse Broadcasting Co., supra. To illustrate the point, suppose Furnari had simply rejected the June 1 offer of settlement, and that on July 1,

_____

[3] The shotgun clause, of course, differs from a typical option in that the performance it compels requires the other party in turn to exercise an option -- either to sell or buy at the stated price per one percent.

8

Holden informed him that the settlement offer had, in fact, silently triggered section 7.07 -- despite not referring to it, not stating the offer in the terms of price per one percent, and referring to collateral matters. If Holden had then asserted that Furnari's failure to make an election within thirty days required Furnari to accept $1 million for his share of JHV, we are certain Furnari would read section 7.07 the same way we do.[4]

<u>Judgment affirmed</u>.

By the Court (Massing, Henry & Grant, JJ.[5]),

Clerk

Entered: December 20, 2024.

---

[4] Holden's request for appellate attorney's fees is denied.

[5] The panelists are listed in order of seniority.

9