NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1287

DANIEL BERG & others[1]

vs.

COMMONWEALTH & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs filed this suit for declaratory relief after the parties failed to agree about the application of "day" as used in G. L. c. 33, § 59 (a)[3], to twenty-four hour shifts.  The parties filed cross motions for judgment on the pleadings.  The Superior Court judge concluded that the applicable collective bargaining agreements required the plaintiffs' claim to be

_____

[1] Andrew Ferrara; Local S-28, International Association of Fire Fighters, AFL-CIO; and Local S-29, International Association of Fire Fighters, AFL-CIO.  Andrew Ferrara and Local S-28, International Association of Fire Fighters, AFL-CIO did not file a brief or otherwise participate in this appeal.

[2] Executive Office of Public Safety and Security, Military Division, and Human Resources Division.

[3] As relevant to this appeal, the statute was amended in July 2016 and November 2018.

submitted to arbitration, denied the plaintiffs' motion, and allowed the defendants' cross motion, dismissing the complaint. The plaintiffs appealed.  We affirm.

Background.  Plaintiff Daniel Berg was employed as a firefighter by the Commonwealth and was a member of Plaintiff union Local S-29, International Association of Fire Fighters, AFL-CIO.  Berg served in the United States Air Force from December 3, 2014, until his honorable discharge on December 3, 2020.  When his military obligations conflicted with his scheduled firefighter shifts, he took military leave.

The plaintiffs were party to two collective bargaining agreements with the Commonwealth.  The first (CBA) was in effect from January 1, 2018, to December 31, 2020.  The CBA created a grievance process for "any dispute concerning the application or interpretation of the terms of this collective bargaining Agreement."  That grievance process ended with a "final and binding" decision by an arbitrator, which could not "add to, subtract from[,] or modify any provision of [the CBA]" or be "inconsistent with applicable law."  The CBA also contained a provision addressing covered employees' entitlement to military leave:  "An employee shall be entitled during the time of his/her service in the armed forces of the Commonwealth, and as a member of a reserve component of the armed forces of the United States, under Section[] . . . 59 . . . of Chapter 33 of

2

the General Laws, to receive pay therefor[], without loss of his/her ordinary remuneration as an employee." The military leave section of the CBA stated that it "shall be construed in conjunction with applicable law."

The successor agreement to the CBA was a Memorandum of Understanding (MOU), which became effective January 1, 2021, following the expiration of the CBA. The MOU largely extended the CBA's provisions, including the grievance process, through December 31, 2023, but rescinded and replaced the section on military leave. The MOU's military leave provision reads, in full: "Military Leave shall be granted in accordance with applicable State and Federal law."

Discussion. "We review the allowance of a motion for judgment on the pleadings de novo." Mullins v. Corcoran, 488 Mass. 275, 281 (2021). "In deciding the motion, all facts pleaded by the nonmoving party must be accepted as true." Id.

Whether the plaintiffs' claim must be arbitrated "turns on a matter of contract interpretation which is to be resolved by reading and construing the whole contract in a reasonable and practical way, consistent with its language, background, and purpose" (quotation and citations omitted). Sheriff of Suffolk County v. AFSCME Council 93, Local 419, 75 Mass. App. Ct. 340, 342 (2009). "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration," we do not "rule

3

on the potential merits of the underlying claims." Local Union No. 1710, Int'l Ass'n of Fire Fighters, AFL-CIO v. Chicopee, 430 Mass. 417, 420-421 (1999) (Local Union No. 1710), abrogated in part on other grounds by Massachusetts Highway Dept. v. Perini Corp., 444 Mass. 366, 376 n.11 (2005), quoting AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986) (AT&T).

Broadly, "[p]ublic policy in the Commonwealth strongly encourages arbitration." School Comm. of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753, 758 (2003). "Arbitration has long been viewed as a particularly appropriate and effective means to resolve labor disputes." Id. Still, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Local Union No. 1710, 430 Mass. at 420-421, quoting AT&T, 475 U.S. at 648. Where a collective bargaining agreement contains an arbitration provision, there is a "presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Local Union No. 1710, supra at 421, quoting AT&T, supra at 650.

4

Despite this presumption, a claim subject to arbitration under a collective bargaining agreement might still be brought in court on several grounds, two of which are relevant here. First, a party "need not submit to arbitration disputes over independent substantive, personal, nonwaivable statutory guarantees." Rooney v. Yarmouth, 410 Mass. 485, 490-491 (1991). Second, a party may resist arbitration by showing "the most forceful evidence of a purpose to exclude the claim from arbitration" (quotation and citation omitted). Sheriff of Suffolk County, 75 Mass. App. Ct. at 343-344.

We must first determine whether the plaintiffs' claim under G. L. c. 33, § 59 (a), is a grievance under the CBA. If so, it is subject to arbitration. The CBA defines "any dispute concerning the application or interpretation of the terms of this collective bargaining Agreement" as a grievance. Here, as in Rooney, a claim under a statute incorporated by the collective bargaining agreement "constitutes a grievance [under the agreement]." Rooney, 410 Mass. at 491. So, we begin with the language of the CBA and the MOU to determine whether they incorporate § 59 (a). See Rooney, supra at 486-487, 491.

They do. As noted, the MOU affords Commonwealth employees "[m]ilitary [l]eave . . . in accordance with applicable State . . . law." Because § 59 (a) is applicable State law, it is incorporated. For its part, in its military leave section, the

5

CBA expressly incorporates § 59 and states, "This Section shall be construed in conjunction with applicable law." The appellants assert that this express incorporation is insufficient because the CBA -- signed prior to the statute's 2018 amendments -- incorporated § 59 (a) as it then existed, not as later amended. Specifically, they point to language in the CBA's military leave section directly quoting portions of § 59 (a) that were later changed by the 2018 amendments.

While it is true that "the incorporation could be more precise," Rooney, 410 Mass. at 487 n.2, the requirement that the military leave section of the CBA be "construed in conjunction with applicable law" satisfies us that the parties to the CBA intended that their agreement cover claims made under the statute. See id. at 487 n.2, 490-491.

Having concluded that the CBA and MOU incorporate G. L. c. 33, § 59 (a), we move next to the appellants' contention that their military leave claim, though a grievance under the CBA, is either "an independent substantive, personal, nonwaivable statutory guarantee" such that their right to adjudication in court cannot be waived, Rooney, 410 Mass. at 490-491, or is a claim shown by "forceful evidence" to have been excluded from arbitration by the parties, Sheriff of Suffolk County, 75 Mass. App. Ct. at 343 (quotation and citation omitted). We disagree.

6

Personal, substantive, nonwaivable statutory guarantees exist in a "narrow area of general public policy statutes" that "set forth national or Statewide minimum standards or guarantees and, therefore, assume a public policy purpose of advancing social policy." DaLuz v. Department of Correction, 434 Mass. 40, 46-47 (2001). See, e.g., Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739-746 (1981) (statute guaranteeing minimum wage and overtime); School Comm. of Brockton v. Massachusetts Comm'n Against Discrimination, 377 Mass. 392, 399 (1979) (statute prohibiting workplace discrimination); Newton v. Commissioner of Dep't of Youth Servs., 62 Mass. App. Ct. 343, 347 (2004) (statute guaranteeing timely payment of wages). Statutes providing for individual "economic concerns" do not create such nonwaivable rights. See DaLuz, supra at 47 (statutory right to assault pay for limited class of Commonwealth employees not considered nonwaivable); Rooney, 410 Mass. at 492 (statutory right to educational incentive pay not considered nonwaivable). The benefits of G. L. c. 33, § 59 (a), are, like the educational pay incentives found arbitrable in Rooney, "economic" in nature, and available to a narrow, self-selecting group of Commonwealth employees, and thus must be arbitrated. See Rooney, supra. See also DaLuz, supra.

7

We also conclude there is no "forceful evidence" the parties meant to exclude military leave claims under § 59 (a) from arbitration. In support of this exception, the appellants point to statements made by members of the Commonwealth's contract negotiation team they maintain show a "mutual understanding" that such disputes would be adjudicated in court. But the grievance process outlined in the CBA, and extended by the MOU, requires "mutual agreement of the parties in writing" to waive any of its requirements, including arbitration. The appellants point to no such evidence. What is more, the CBA's integration clause, unchanged by the MOU, dictates that the written agreement "shall constitute the total agreement between the parties." Although we are sympathetic to the plaintiffs' frustration with the Commonwealth's shifting stances during negotiation and litigation, when balanced against the incorporation of G. L. c. 33, § 59 (a), by the CBA and MOU, those extra-contractual statements do not rise to the level of "forceful evidence" required to rebut the presumption of

8

arbitrability.  See Sheriff of Suffolk County, 75 Mass. App. Ct. at 343.

Judgment affirmed.

By the Court (Hershfang, Hodgens & Smyth, JJ.[4]),

Clerk

Entered:  March 24, 2026.

---

[4] The panelists are listed in order of seniority.